TOWLE et al. v. AMERICAN BLDG., LOAN & INV. SOC.

(Circuit Court, N. D. Illinois. March 10, 1894.)

BUILDING AND LOAN ASSOCIATIONS—DISSOLUTION IN EQUITY—ACCOUNTING.

Where a building and loan association, organized under a statute which declares that borrowers may repay their loans at any time, and be entitled to a credit of one-eighth of the premium for each of the unexpired years of the association's eight-year period, is dissolved by a court of equity before the expiration of the eight-year period because it is losing money, the court called in all the loans, and distributed the proceeds among the stockholders, giving the borrowers credit for the unearned part of their premiums, as though they had voluntarily paid up, but gave them no credit on their loans for assessments and fines paid by them, since all the stockholders are alike responsible for the losses of the association.

Suit by Marcus Towle and others against the American Building, Loan & Investment Society. A receiver was appointed to take charge of the defendant's business, and he applies to the court for instructions.

Jesse A. Baldwin, for complainants.

W. G. Cooke, for defendant.

Collins, Goodrich, Darrow & Vincent, for the receiver.

GROSSCUP, District Judge. The receiver in this cause asks for the direction of the court relating to the terms on which the borrowers from the association may repay their loans, and, also, the claims which the receiver shall advance on like questions in cases of compulsory foreclosure. The laws of Illinois provide that each stockholder in a building and loan association may borrow from such association upon the security of his stock, not to exceed $100 for each share thereof (that being the par value); that he shall give, in addition thereto, real-estate security acceptable to the board; and that he shall have the right at any time to repay the loan, in which case there shall be refunded to him the one-eighth of the premium thus bid for each of the unexpired years of the eight-year period during which the association is supposed to run. The law also provides that each stockholder shall have the right to withdraw from the association, and, upon a compliance with certain conditions, shall be entitled to receive the amount paid in, and such proportion of the profits thereof as the by-laws may determine, less all fines and other charges. These associations are essentially corporate copartnerships. They have no function except to gather together, from small, stated contributions, sums large enough to justify loans. Their officers are the agents of every stockholder. They have no debtors or creditors except the stockholders, and whether a stockholder is creditor or debtor depends on whether he has exercised his privilege of borrowing money from the common fund. The insolvency of such an institution is sui generis. There can be, strictly speaking, no insolvency, for the only creditors are the stockholders by virtue of their stock. The so-called insolvency is such a condition of the affairs of the association as reduces the available and collectible funds below the level of the amount of stock already paid in. The association is said to be insolvent when it cannot pay back to its stockholders the amount of their actual contributions, dollar for dollar. The association does not deal as a corporate entity with its borrowers as strangers. The by-laws determine who become borrowers, and the officers, who are agents of such borrowers, as well as of the remaining stockholders, in the transaction, simply execute these by-laws. None of the liabilities or maxims, therefore, which apply to contracts between strangers are applicable to these transactions. The transaction of borrowing is not between strangers, or the result of contract or dealing, but is simply the execution of pre-existing rights among the stockholders. I think it plain that, when the condition of the association shows that, instead of making profits, it loses the principal of the contributing stockholders, there is power in a court of equity to wind up its affairs upon purely equitable principles. This will consist in calling in the loans, and paying out the funds thus received to the stockholders. It is not seriously disputed that on such an adjustment the borrower is under obligation to repay the actual sum received, together with interest thereon.

The first question is whether he is entitled to a credit for the amount of assessments paid upon his stock. I think not. Such a credit practically would be paying par on his stock, a preference over other stockholders to which clearly he is not entitled. Neither do I think he should be allowed credit for fines paid in. They are the result of his personal delinquencies, and, eo instanti, become the common property of all the members of the association.

The most difficult question relates to the premium. The borrower has, at a stated meeting, bid a certain premium, presumably the highest offered, for the privilege of obtaining the loan. The gross amount of this premium has already been deducted from the money advanced, but is included in the face of the loan. It is urged that he ought to be credited with the premium, because he has neither received it in money, nor its consideration in the length of time for which the loan was to run, or in the manner of its repayment as originally contemplated. The objection would be insuperable if the borrower at the time of the loan stood in the attitude of a stranger to the association, and the act of borrowing constituted such contract as usually arises upon a loan. In such a case the lender could not insist upon the premium while withholding a portion of the consideration and benefit upon which it was passed. But the relation between the borrower and his associate stockholders, and the legal relationship arising from the transaction, are not of that character, as has already been pointed out. It follows that these legal principles are not necessarily controlling. The question emancipates itself, therefore, from legal or contract technicalities, and reduces itself to one of simple equity and fair play. The inability of the association to proceed to its expected termination by reason of the impairment of its collectible loans is attributable alike to each stockholder. The officers of the association are their agents, and the results of their investments are alike the fortune or misfortune of each stockholder, whether it be borrower or nonborrower. When a condition thus brought about justifies a court of equity in peremptorily terminating the career of the association, the adjustment should be made as near upon the line of what would take place if the association lived out its life as is possible. I can think of no fairer rule than to regard the nominal life of the association as eight years, and to look upon each year short of that period as an aliquot portion thereof. This would give the borrower credit for such premium as the number of years, or fractional portions thereof, unlived by the association, bear to the whole period of its normal life of eight years. To that extent, the premium is unearned; for the period already passed, it has been earned. It is true that the borrower might not have bid the premium if he had foreseen the premature death of the association; but neither would his fellow stockholders, with a like foreknowledge, have contributed their installments. The misfortune of the one is not greater than that of the other. If the borrower were to be credited with the entire premium, the taking of possession of the assets by a court of equity would immediately reduce the already impaired assets by the amount of the aggregate premiums. It might easily be that the intervention

of equity near the close of the eight years would, under such circumstances, be a positive boon to the borrower, by incidentally deducting from the loan a large percentage of the principal. The temptation and uncertainty thus introduced ought, if possible, to be averted. The receiver is directed to proceed in accordance with the foregoing outlines.