Forwood v. Eubank, Assignee, &c.

---

CASE 32—LIQUIDATION OF BUILDING ASSOCIATION—
MARCH 22.

106 291
110 11

# Forwood v. Eubank, Assignee, Etc.

APPEAL FROM COMMON PLEAS DIVISION OF JEFFERSON CIRCUIT COURT.

BUILDING AND LOAN ASSOCIATIONS—WITHDRAWING STOCKHOLDERS NOT CREDITORS.—In the liquidation of the affairs of an insolvent building and loan association, the holder of paid-up stock who has given notice of withdrawal prior to the assignment will not be entitled to preference over the holders of installment stock.

C. B. SEYMOUR AND O. H. HARRISON FOR THE APPELLANT.

The appellant, under the facts of this case, was a creditor, and not a stockholder, and as such was entitled to preference over the stockholders in the distribution of the assigned assets.

KOHN, BAIRD & SPINDLE AND JAMES P. GREGORY FOR APPELLEES.

1. The relation created between appellant and the Globe Building & Loan Company was that of stockholder in the corporation, and

not creditor and debtor. By-laws, sec. 1, art. 5; Cook on Corps. (4th ed.), vol. 1, sec. 12, p. 40; Towle v. Bldg. Co., 78 Fed. Rep., 688; Styles' Appeal, 95 Pa. St., 122; State v. Bldg. Co., 35 O. St., 258; *In re* Professional Bldg. Co., L. R. ——., 6 Ch., 856; Murray v. Scott, L. R., 9 App., 552; Frankfort Bridge Co. v. City of Frankfort, 18 B. M., 46; Bank v. Kiefer Milling Co., 95 Ky., 97.

2. Both the charter and by-laws of the Globe Building & Loan Company and the Statutes of Kentucky forbid the creation of any preferences among members of a building and loan association. Gen. Stat., ch. 56; By-laws, sec. 1, art. 5; Ky. Stats., secs. 854, 857, 860, 861, 869; Cook on Corps. (4th ed.), vol. 1, secs. 267, 268, 271.

3. Any preference among members of a building and loan association is contrary to the genius of such an organization and therefore void. Rogers v. Rains, 100 Ky., 295; Thompson on Bldg. Assns. (2d ed.), sec. 129, p. 247; Bertsch v. Bldg. Co., 48 S. W. R., 954; Wall v. Society, 32 Fed. Rep., 273; Latimer v. Bldg. Co., 81 Fed. Rep., 776; Hohenshell v. Bldg. Co., 41 S. W. R., 948; Gibson v. Bldg. Co., 48 N. E. R., 580; Post v. Bldg. Co., 37 S. W. R., 216; Leahy v. Bldg. Co., 76 N. W. R., 625; Towle v. Bldg. Co., 75 Fed. Rep., 938; Rabbitt v. Wilcoxen, 72 N. W. R., 306; King v. Bldg. Co., 48 N. E. R., 677; Wierman v. Bldg. Co., 67 Ill., App., 550.

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In May, 1895, appellant became the owner of fifteen shares of paid-up stock, at $100 per share, in the Globe Building & Loan Company—a building and loan association incorporated in February, 1891, under chapter 56 of the General Statutes. In July, 1897, the association conveyed its property to a trustee for the benefit of its creditors; and, in the action brought to settle the assigned estate, appellant presented her claim as a preferred one, having theretofore given a withdrawal notice as provided in the by-laws of the association. The chancellor overruled her contention, saying: "All stockholders will be paid equally in proportion to their respective payments for

stock, common and preferred alike.  Both the preferred and common stockholders entered into a scheme which promised unusual profits from the lending of their money by the association at a much higher rate of interest than the law permitted them individually to charge.  They believed that the association might legally do this, but it has been authoritatively decided to the contrary, and the company forced into insolvency by its liability for excessive interested collected by it.

"All the stockholders invested their money in an enterprise that is impossible of performance, because of the statute against usury.  The formation of the company was induced by a mistake of law, which was shared in by all the stockholders, and which has brought on a misfortune common to all of them, because the enterprise contemplated by the articles of incorporation and by the stockholders could not mature.  Under such a state of fact, each stockholder must bear his proportionate share of the burden, and he can not equitably claim a right to be paid in full at the expense of the other stockholders, who did nothing more nor less than make the same mistake of law."

We think the chancellor reached a correct conclusion.  This court has recently announced, in Reddick-Stofer's Appeal, 20 Ky. Law Rep., 1720 [50 S. W., ——], in Sumrall v. Commercial Bldg Trust's Assignee, 20 Ky. Law Rep., 1801, [50 S. W., 69], and in Safety Building & Loan Co. v. Ecklar. 20 Ky. Law Rep., 1770, [50 S. W., 50], that the underlying principles of such associations demand exact equality and mutuality among all their members; and certainly this is true when the members are all alike participants in a plan supposed by them to be legal, but which authorizes the exaction of usurious rates of interest.  Apart from this, however, while we do not in-

timate that a different result would follow, there is in fact
nothing whatever in the company's articles of incorpora-
tion authorizing the issuance of preferred stock; and there
certainly is not in chapter 56, General Statutes, because
the building and loan plan is not mentioned.

There is a by-law of the company to the
following effect: "Paid-up stock may be with-
drawn at any time after one year from date
of certificate, and the holder thereof will receive the
cost price of such stock, together with interest as follows:
Forty-dollar stock, six per cent. per annum; fifty-five dollar
stock, six per cent. per annum; seventy-five dollar stock,
seven per cent. per annum, and one-hundred-dollar stock,
eight per cent. per annum—for the full time. This stock
will also participate in the net profits over and above the
interest mentioned, and shall bear their proportion of ex-
penses and losses." Another by-law, providing for the
expense fund, fixes a limitation of eight cents
per share per month upon installment stock, and
six per cent. per annum on paid-up and pre-
paid stock. The body of appellant's certificate of
stock recites that, "as such stockholder," she "is a mem-
ber of said company." On the back of this certificate is
the following recital: "Terms and conditions: The Globe
Building and Loan Company guarantees the prompt pay-
ment of the interest, as per the coupons, on the within cer-
tificate, and guarantees to redeem this certificate at face
value at any time after twelve months from date of issue,
provided 60 days' notice shall have been given. This stock
shall not participate in the profits or losses of the com-
pany, but prompt payment of the principal and interest of
this certificate shall be guaranteed by the entire assets
of the company."

It is the contention of appellant's counsel that stock issued upon the foregoing conditions is stock only in name; that it is in fact a misnomer to call the certificate an evidence of stock; that the transaction is simply a borrowing and lending of money, and that the appellant is a creditor, not a stockholder or member, of the association; and that the borrowing of money is not an *ultra vires* act. "Every commercial body," say counsel, "whether an individual, partnership or corporation, must have the power to borrow money. Commerce means credit and credit means the power to borrow." We deem it necessary only to repeat, without elaboration, our conclusion heretofore stated—that the exercise of such powers is wholly foreign to the design and purposes of such associations. Stofer's Appeal 20 Ky. Law Rep., 1720 [50 S. W., ——]; Safety B. & L. Assn. v. Ecklar, 20 Ky. Law Rep., 1770; [50 S. W., 50]. In Towle v. Building and Loan Co., 78 Fed., 688 it was said of such an association: "It can not borrow money, nor loan money, except such as is paid in by its members in the manner pointed out by the law, nor engage in any general business transactions. Its sole function is to consolidate the small savings of the many, and by a system of unified loans, secure advantages to each contributor that he could not, perhaps, individually obtain. To this process of consolidation, and of loaning out the gatherings thereof, and their collection again, with the interest thereon, for redistribution, with such incidental powers as are necessary to make the process effective, the authority of the corporation is strictly confined. The usefulness of such corporations, and their safety, depend upon strict limitation. To grant them, by judicial implication or intendment, a wider amplitude of power, would destroy the only safe assurance on which they are granted." Nor does

it follow that if the contract is declared *ultra vires* of the corporation, the holder of the preferred stock is to be declared a creditor of the association when insolvency intervenes. Gibson v. Safety B. & L. Association, 170 Ill., 44, [39 L. R. A., 202; 48 N. E., 580]. The effect of denying the preference does not invalidate the stock. Cook on Corp. (4th ed.), sec. 271. The only ground of appellant's claim presenting any sort of plausibility is that she has given notice of withdrawal; but this, we have seen in the recent appeal of Stofer, cited above, gives her no priority over other stockholders. It would be a singular co-operative mutual association that could give unequal privileges to its stockholders, or base their priorities on the question of diligence in giving notice. In respect to being purely co-operative and mutual, such associations are different from corporations generally. As said by Mr. Thompson in his work on Building Associations (2d ed., sec. 129): "The poor and illiterate classes were encouraged to support it, and it is poor policy that would subordinate their claims to a higher membership." In Bertche v. B. & L. Co., [48 S. W., 954], the supreme court of Missouri said: "All members must participate equally in the profits, and bear the losses, if any, in the same proportion. * * The plainest principles of justice and honesty clearly forbid that one class of stockholders, equally meritorious, should be compelled to suffer, that others may profit thereby." In many of the courts of other States, while the fundamental principle of co-operation and equality is announced in forceful language, there seems to have been sanctioned a system of classification of stock into preferential groups wholly destructive of the principle announced. In our opinion, there can be no preference in stock among the members of a building and loan association. The judgment below is affirmed.