### HANNON v. COBB.

(Supreme Court, Appellate Division, Fourth Department.  March 21, 1900.)

BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—RIGHTS OF BORROWERS.

Upon the insolvency of a building and loan association, and the execution of a general assignment for the benefit of creditors, a borrower is not entitled to treat the inability of the association to mature his stock, consequent upon the assignment, as a breach of its contract, for which he may recover for the damages sustained, by applying all payments made by him, with interest thereon, in reduction of the sum borrowed, with interest on that sum, and require the satisfaction of his mortgage upon payment of the remainder.

Action by James Hannon against Dorr Raymond Cobb, as assignee of the Central City Building & Loan Association, under Code Civ. Proc. art. 2, tit. 2, c. 11, for a determination of the amount payable upon a mortgage. Judgment for defendant.

The Central City Building & Loan Association was incorporated on the 27th day of March, 1891, in pursuance of the provisions of chapter 122 of the Laws of 1851 and the laws amendatory thereof, for the purpose of affording its members a safe and profitable investment of their savings, to facilitate the purchase and improvement of real estate, to accumulate a fund, and to loan such fund or any portion thereof; and until the 8th day of April, 1898, it was engaged in conducting the business for which it was created, with its principal office at the city of Syracuse. On the last-mentioned date the association, having become insolvent, executed to the defendant, Dorr Raymond Cobb, a general assignment for the benefit of creditors, without preferences. Subsequently, and on the 28th day of April, 1898, schedules were duly filed by the assignee, by which it appeared that the assets of the association amounted to $142,367.20, and that its total liabilities were $319,907.39, of which amount the sum of $60,451.50 was due to general creditors, and the sum of $259,455.89 was due to shareholders. On the 10th day of October, 1893, the plaintiff applied for and became the owner of 10 shares of installment stock, series B, of the par value of $100 per share, and on the 15th day of November following he applied for a loan of $1,000, which application was granted on the 27th day of the same month; and as security for such loan the plaintiff gave his bond, together with a mortgage upon premises at East Syracuse, in the county of Onondaga, and at the same time deposited with the association his 10 shares of stock, the association retaining out of the money so loaned the sum of $100, which represented what was termed the "initial premium," and the further sum of $12.70 to defray the expense of drawing and recording the mortgage. After the mortgage had passed into the hands of the defendant, as an asset of the association, by virtue of the general assignment, the plaintiff tendered him the sum of $318.85, and demanded that he surrender the mortgage and cancel the same of record. This the defendant refused to do unless the plaintiff would pay the sum of $802.92. It is conceded that the last-mentioned sum is due upon the mortgage, if the defendant's method of computation is correct, but that the smaller sum is all that is due if the plaintiff has adopted the proper method of computation, and the sole question before the court is to determine which of these two methods is correct.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Homer Weston, for plaintiff.
Edgar N. Wilson, for defendant.

ADAMS, P. J. The method adopted by the plaintiff to determine the amount due upon his mortgage is founded upon the theory that the association, having voluntarily transferred all of its property through the medium of a general assignment, has by that act deprived itself of the power to mature the plaintiff's stock at any time in the future, and that in consequence thereof it has violated its contract with the plaintiff, and become liable to him for such damages as he has suffered by reason of its breach. In this view of the situation, it is claimed that the true rule of damages would be followed by applying all payments made, with interest thereon, in reduction of the sum borrowed, with interest on that sum, and that by this method the sum remaining would represent the amount actually due upon the plaintiff's mortgage, and the amount he would be required to pay as a condition of having it discharged of record.

There would be much force in this contention if the plaintiff occu-
pied the attitude of an ordinary borrower of money seeking to ad-
just a strict legal right between himself and his creditor.      But
such is not the case, for his relation to the association and its stock-
holders was not that of a stranger.   It was, rather, that of a co-
partner or co-member, who by virtue of his membership acquired
the right to borrow; but this right carried with it the burden of
assuming in common with the other stockholders all the risks in-
cident to membership, including that of the insolvency of the as-
sociation.     This being so, the adjustment of the plaintiff's rights
and interests demands the application of equitable, rather than le-
gal, principles; and, when subjected to such a test, the plaintiff's
theory becomes untenable, inasmuch as its adoption would neces-
sarily give him a preference over the other stockholders, by en-
abling him to withdraw from the assets of the association pre-
miums paid in by him under the requirements of its articles and
by-laws, which surely would be in contravention of a fundamental
principle of equity.   O'Malley v. Association, 92 Hun, 572, 36 N.
Y. Supp. 1016; Choisser v. Young, 69 Ill. App. 256; Strohen v. As-
sociation, 115 Pa. St. 279, 280, 8 Atl. 843; Towle v. Society (C. C.)
61 Fed. 448.   In the case last cited a receiver had been appointed
to take charge of the defendant's business, and he applied to the
court for instructions as to the terms on which borrowers of the
association might repay their loans, and also as to the claims which
the receiver should advance in the event of compulsory foreclosure.
In passing upon this application the court discussed at some length
the very questions here presented, and in its opinion, delivered by
Grosscup, J., made use of the following language:

"These associations are essentially corporate co-partnerships.    They have
no function, except to gather together from small, stated contributions sums
large enough to justify loans.   *  *  *   The so-called insolvency is such a
condition of the affairs of the association as reduces the available and col-
lectible funds below the level of the amount of stock already paid in.   *  *  *
I think it plain that when the condition of the association shows that, instead
of making profits, it loses the principal of the contributing stockholders, there
is power in a court of equity to wind up its affairs upon purely equitable prin-
ciples.   This will consist in calling in the loans, and paying out the funds thus
received to the stockholders.   It is not seriously disputed that on such an
adjustment the borrower is under obligation to repay the actual sum received,
together with interest thereon.   The first question is whether he is entitled to
a credit of assessments paid upon his stock.   I think not.   Such a credit, prac-
tically, would be paying par on his stock,—a preference over other stockhold-
ers to which, clearly, he is not entitled."

By a similar course of reasoning the learned judge reached the
conclusion that the borrower is entitled to credit for only such por-
tion of premiums paid as the number of years or fractional parts
thereof unlived by the association bears to the entire period of its
normal life, which in the case he was considering was eight years.
In the present case, however, the premium was paid in installments
for the length of time that the loan had actually run, and conse-
quently, within the rule laid down in the case cited, the plaintiff
would be entitled to no credit for premiums paid.   If this seems
like a harsh rule, it must be borne in mind that both borrower and

stockholder are common sufferers by reason of the untimely and unfortunate termination of the association of which they were members, and that to credit the former with the entire amount of premiums paid would have the effect to reduce the impaired assets to that extent, and thus deprive the stockholders of their just and proper share of such assets, which are made up in large part of premiums paid in. Such a result would certainly be inequitable to the stockholders, and consequently one which should be avoided if possible. We conclude, therefore, that the method employed by the defendant in ascertaining the amount actually due upon the plaintiff's mortgage is one which adjusts the burdens of the case as equally as may be, and one which does not cast upon borrowers or nonborrowers more than their respective shares thereof. But, while adopting this method, we deem it proper to suggest that we are unable to see how, in view of the uncertainty which must necessarily exist respecting the character of the assets which have come into the hands of the defendant, and of the large outstanding indebtedness of the association, he can with perfect safety compute the amount due upon the mortgage of any borrower without first requiring that such borrower's stock be paid in full. This, however, is a matter which we are not called upon to determine under the terms of the submission, and therefore it is one concerning which the defendant will have to exercise his own judgment.

The defendant is entitled to judgment determining that the amount to be paid by the plaintiff, as a condition of having his mortgage discharged, is the sum of $802.92, with interest from the date of the submission, and that the plaintiff's proceedings be dismissed, with costs. All concur.