### BINGHAM *v.* THE MARION TRUST COMPANY, RECEIVER.

[No. 3,788. Filed June 28, 1901.]

BUILDING AND LOAN ASSOCIATIONS.—*Insolvency.*—A building and loan association is insolvent when it cannot pay back to its stockholders the amount of their actual contributions, dollar for dollar. *p. 256.*

SAME.—*Paid Up Stock.*—*Insolvency.*—The holder of paid up or prepaid stock in a building and loan association is a stockholder, and, upon the insolvency of the association, can have no rights superior to the rights of the holder of running stock. *pp. 257-261.*

SAME.—*By-Laws.*—*Power of Association to Guarantee Dividends.*— Where a building and loan association, by its by-laws and stock

certificates, guarantees to pay dividends at a specified rate on its paid up stock, such dividends can only be paid out of the surplus profits, without injuring the capital stock. *pp. 261, 262.*

BUILDING AND LOAN ASSOCIATIONS.—*Receiver Represents Stockholders.* —The doctrine that the receiver of a corporation stands only for its creditors does not apply to building and loan associations. The receiver in such corporations represents not only creditors in the general meaning of the term, but he represents the stockholders as well, and must adjust the affairs of the association equally among them. *p. 269.*

SAME.—*Dividends and Withdrawals Wrongfully Paid.—Recovery.*— The receiver of an insolvent building and loan association may recover dividends and withdrawals which had been wrongfully paid to the holders of paid up stock from the capital stock of the association. *pp. 262-269.*

From Marion Circuit Court; *H. C. Allen,* Judge.

Petition for instructions by the Marion Trust Company, as receiver of the Washington Savings and Loan Association. From a decree adjudging the association insolvent and fixing the status of the holders of paid-up stock, Harriet A. Bingham, a stockholder of the association, appeals. *Affirmed.*

*A. C. Ayres, A'. Q. Jones, J. E. Hollett* and *J. E. McCullough,* for appellant.

*J. W. Noel* and *F. J. Lahr,* for appellee.

COMSTOCK, J.—This appeal is from the decision of the trial court in overruling the exceptions of appellant to the report of the Marion Trust Company as receiver of the Washington Savings and Loan Association, in which the receiver made a showing of its liability to appellant as a stockholder in said association, and in which the appellant was given judgment for the amount of her claim as found by the trial court. The Marion Trust Company was appointed receiver of the Washington Savings and Loan Association May 20, 1899, and under the instructions of the court was winding up the affairs of the association.

The issues were presented in the following manner: The receiver petitioned the court for instructions, in which petition it made a showing that a large amount of money had

been paid from the assets of the association as dividends upon certain classes of stock known as prepaid stock, and paid up stock, at rates of from eight per cent. to ten per cent. per annum, at times when the association had no net profits or surplus, and when it was in an insolvent condition, and that no dividends of any character were ever credited to or paid upon the ordinary running stock of the association and that such dividends were paid upon prepaid and paid up stock, notwithstanding the fact that there were at no time any profits from which to declare dividends, and that such dividends were paid from the capital stock of the association, to its great impairment.

Upon the showing made by the receiver, the court ordered the receiver, in cases where stock upon which said dividends had been paid is still in force, to recover such paid dividends by setting off the amount thereof against the distributive share of the stockholder who received them, and retaining from said distributive share of the stockholder such amount as was necessary to reimburse the association.

On the 14th of July, 1900, the receiver made a report, including a schedule of liabilities, in which he showed the liability of the association in favor of Harriet A. Bingham to have been as follows: Book value of stock, $1,500; dividends paid by association and ordered recovered by the court on certificate 138, $219.21, and on certificate 139, $243.60; and that a partial withdrawal had been made of $500 which should also be recovered.

In the same report the receiver showed to the court that certain withdrawals shown by the schedule had been made while the association was insolvent, and the parties making the same were not entitled thereto, and asked that the amount of said withdrawals should be deducted from the distributive share of stockholders to whom such amounts had been paid. And the receiver further prayed authority to declare a dividend of twenty-five per cent. to all stockholders.

The court approved the report and the schedule of liabili-

ties and found that said schedule showed the correct amount due each party named in the schedule, and instructed the receiver to withhold dividends declared on the amounts of all the shareholders, respectively, who had made partial withdrawals, and to return the same to the assets until the whole amount of the withdrawal should be recovered. The court further ordered the receiver to retain the distributive dividends of each and all of the stockholders who had received former dividends when there were no profits, and to return the same to the assets of the association until the assets were reimbursed for said wrongfully paid dividends. The court further ordered that all claims against the association should be adjudicated as shown by said schedule unless objections or exceptions were filed on or before the 4th of September, 1900. Afterward the time was extended to the 17th of September, 1900.

On the 15th of September, 1900, the appellant filed an intervening petition asking that her claim be allowed in the sum of $1,500, without any deductions, and filed her exceptions to the report of the receiver, in which she excepted to the deductions of $219.21 and $243.60, respectively, on account of dividends, and to the deduction of $500 on account of her withdrawal, in which she alleged that she was the owner of certain certificates of paid up stock of the association of $1,000 each, for which she paid the face thereof in full at the time of taking the certificates, and in which she alleged further that a dividend of nine per cent. per annum was guaranteed her in writing on the back of each of said certificates. She alleged further that the amount set out in the schedule as deductions were paid to her as dividends at the rate of nine per cent., under said guarantee, excepting the amount of $500, which was paid to her upon her application for withdrawal on or about the 26th of November, 1898.

The receiver answered, admitting all the facts pleaded in the petition and exceptions, but alleged, in short, that at

all times at which said dividends were paid, and at all times after appellant became a member of the association, the association was insolvent, and there were no profits or surplus, but there was a large deficit in said association, and that said sums purporting to be dividends were paid wrongfully and notwithstanding the fact that there were no net profits or earnings. The receiver alleged further in answer that at the time of the payment of said $500 in withdrawal, the association was insolvent, and that she had no right to withdraw her stock.

The appellant replied in general denial. The issues thus formed were submitted to the court for trial, and upon the request of the appellee, made at the proper time, the court made a special finding of the facts and stated conclusions of law thereon.

Over a motion by appellant for judgment in her favor upon the facts found, judgment was rendered by the court overruling the appellant's objections and exceptions to said report of the receiver, and that her claim against the receiver be allowed in the sum of $2,000; that she recover from the assets of the Washington Savings and Loan Association such portion of her distributive share thereof based upon said claim of $2,000 as may exceed the sum of $962.81 (that being the aggregate amount paid her by said association as dividends upon her stock and upon her withdrawal of $500 of stock before said association went into liquidation or hands of the receiver), but that said distributive share of her said claim shall be retained by the receiver and returned to the assets of said association until the sum of $962.81 shall have been so retained, and said assets reimbursed in said amount, and that the distributive share of said Harriet A. Bingham based upon said claim of $2,000, which may exceed the said sum of $962.81 be paid to her by the receiver.

It is claimed upon this appeal that the court erred (1) in each one of its conclusions of law; (2) in overruling ap-

pellant's motion for judgment in her favor upon the facts found; (3) in overruling the exception of the appellant to the report of the receiver.

The court found specially that the receiver was engaged in winding up the affairs of the Washington Savings and Loan Association, which was a building and loan association organized and existing under the laws of Indiana, the receiver having been appointed May 20, 1899. The Washington Savings and Loan Association had been formed February 7, 1898, by a consolidation which absorbed the Equitable State Building and Loan Association, which had been doing business under the laws of this State since the 1st day of January, 1896, and prior thereto. Appellant became a member of the association on the 11th of May, 1896, taking ten shares of paid up stock of the association, her certificate being of the face value of $1,000, for which she paid $1,000 cash. On the 26th of May, 1896, she took ten additional shares of the same character of stock in the additional amount of $1,000, which she paid in cash to the association.

The by-laws of the association, both at the time she subscribed the stock and at the time of the consideration, provided that paid up stock should be issued in shares of $100 each, which should be paid for in advance at the rate of $100 per share, and should bear dividends at the rate of eight per cent. per annum, in lieu of all other earnings. Section thirty of the by-laws also provided that "the loan fund shall be applicable to the payment of dividends, interest, and loans on approved security, to the payment of withdrawals," etc. Her certificates bore on the back thereof the following: "The holder of this certificate is guaranteed a dividend of nine per cent. per annum, payable semiannually on the first days of April and October of each year, under the by-laws of the Equitable State Building and Loan Association of Indiana. It is hereby agreed by the said holder by the acceptance of this certificate that such dividends shall be in

full of his proportion of all profits arising from the business of the association."

On the first of said certificates the officers of said association paid appellant sums of money purporting to be dividends from May 11, 1896, to October 1, 1898, inclusive, amounting in the aggregate to $219.21. And on account of the second of said certificates, appellant received sums of money purporting to be dividends from May 26, 1896, to October 1, 1898, inclusive, amounting in the aggregate to $243.60.

On the 26th of November, 1898, she was paid by the association upon her application for withdrawal the sum of $500, leaving the sum of $1,500 to her credit upon the books of the association and upon her certificates.

It appears from finding number twelve, that on December 31, 1896, there was a total deficit in the loan fund of $2,231.44, and in the expense fund of $2,809.16, making a total deficit of $5,040.60. On February 7, 1898, at the date of consolidation there was a deficit in the loan fund of $6,271.67, and in the expense fund of $5,261.63, making a total deficit of $11,533.30. And on May 20, 1899, the deficit had increased to the sum of $29,402.68, a portion of this deficit having been acquired by the addition of the Commercial and the original Washington Savings and Loan associations.

In finding number thirteen, it appears that during the year 1896 dividends were paid in the amount of $5,102.62, which amounts practically to all of the deficit of that year. That during the year 1897 dividends were paid in the amount of $5,327.68, being less than the amount of the deficit in the loan fund alone for said year, and that from January 1, 1897, to May 20, 1899, when the receiver was appointed, dividends were paid amounting to $6,375.41, although the deficit amounted to $29,402.68. In finding number sixteen, it appears that all these dividends were paid upon paid up and prepaid stock, and none of them

were paid or credited to ordinary or running stock. In finding number eighteen, it appears that the liabilities of the association at the time of the appointment of the receiver were as follows: On account of paid up stock in force, $8,950; on account of prepaid stock in force, $53,650.22; and on account of running stock, $32,493.47; total $95,093.47. That the amount of dividends paid on paid up and prepaid stock remaining in force at the time of the appointment of the receiver is $14,719.54. In finding number fourteen it appears that the assets in the hands of the receiver approximate about forty per cent. of the liabilities to the shareholders on account of their stock. In finding number eleven that appellant, on and after the 26th of November, 1898, withdrew, upon application of withdrawal, the sum of $500, and that a credit of $1,500 upon her certificates and on the books remains in her favor. On November 26, 1898, the deficit was somewhere between $11,533.30 and $29,402.68.

The court stated among other conclusions of law that at all times alleged the association was insolvent and had no funds available for the payment of dividends; that dividends could only be paid out of net earnings or surplus; that the officers of the association had no right to impair the capital stock by the payment of dividends therefrom; that the guarantee of dividends on the backs of the certificates did not constitute an absolute liability for such stipulated dividends, but provided as a matter of law that such dividends would be paid if there were at the time of maturity net profits from which they could be paid; that by-law number thirty did not authorize the officers to pay dividends out of the capital stock and thereby render the association insolvent; that at the time at which said $500 was paid upon withdrawal to appellant the association was insolvent, and appellant had no right to withdraw; that said sums so wrongfully paid as dividends are a lien upon the stock, and should be retained by the receiver out of the respective share-

holder's distributive share of the assets, and returned to the association until entirely reimbursed; that said $500 paid as withdrawal to appellant should be treated by the receiver as an advance upon her distributive share of the assets and retained from the first dividend paid to her by the receiver.

Conclusions numbers fourteen, fifteen, and sixteen, are as follows: (14) "That a receiver of an insolvent building and loan association, upon settling with shareholders upon distribution, should examine the whole account of each shareholder and apply the rule of mutuality and equity thereto, and if a shareholder be found to have received money in payment of a partial withdrawal when such association was insolvent, the amount so paid him shall be treated as an advance to him and subtracted from the amount of his distributive share based upon the face of his stock before such partial withdrawal." (15) "In examining the account of a shareholder with the association, if the receiver finds that dividends have been paid said shareholder when none could be legally paid, said amounts paid as dividends should be treated as and are liens against the stock of such shareholder, and said amounts should be retained by the receiver from the share of such shareholders upon distribution." (16) "That said Harriet A. Bingham is entitled to have her claim allowed on the basis of the face of her stock, viz., $2,000, and that dividends should be declared to her by the receiver on said basis, but that all dividends declared to her and representing her distributive share of the assets should be retained by the receiver and returned to the assets of the association until the sum of $219.21 paid as dividends on certificate number ninety-six and the sum of $243.60 paid as dividends on certificate number ninety-seven and the sum of $500 paid to her as partial withdrawal, aggregating $962.81, shall have been reimbursed to the association, and thereupon and thereafter all the residue of her distributive share should be paid to her by the receiver."

Before the rendition of the judgment, the appellant moved

the court in writing that her claim be allowed on the basis of $1,500 without liens or off-sets against the same, and that she be paid by the receiver upon the basis of said $1,500 her distributive share of the assets of the association without deductions therefrom of any kind. Her motion was over-ruled and exceptions duly reserved.

Counsel for appellant insist (1) that the association was not insolvent, as stated in the first conclusion of law. This claim of error is based upon the proposition that a building and loan association is a corporation; that the facts found show that there is enough cash in the hands of the receiver to pay all the creditors and fifteen per cent. of the face value of the stock of the stockholders; that a corporation, like an individual, is insolvent only when it is unable to pay its debts.

Insolvency, as applied to building associations, is thus de-fined by Endlich on Building Associations (2nd ed.), §511: "But the insolvency of a building association is a peculiar thing. As intimated by Ludlow, P. J., the number and ex-tent of outside creditors are necessarily limited. It would, therefore, be scarcely conceivable that the assets of a build-ing association should shrink in so remarkable a manner as to leave such claimants in a position of inability to reim-burse themselves by process of law. No case, it is believed, has occurred in which this was the ground of a successful application for the appointment of a receiver. On the con-trary, it has been repeatedly asserted by the courts that the application must proceed from persons interested and suing as members. It is the inability of the building association, not to pay its outside debts (for that does not seem to have ever occurred, and, in the nature of things can scarcely be thought of), but to satisfy the demands of its own members, that has been recognized as an insolvency."

In *Towle* v. *American, etc., Soc.*, 61 Fed. 446, upon this subject, it is said: "These associations are essentially cor-porate copartnerships. They have no function except to

gather together, from small, stated contributions, sums large enough to justify loans. Their officers are the agents of every stockholder. They have no debtors or creditors except the stockholders, and whether a stockholder is creditor or debtor depends on whether he has exercised his privilege of borrowing money from the common fund. The insolvency of such an institution is *sui generis.* There can be, strictly speaking, no insolvency, for the only creditors are the stockholders by virtue of their stock. The so-called insolvency is such a condition of the affairs of the association as reduces the available and collectible funds below the level of the amount of stock already paid in. The association is said to be insolvent when it can not pay back to its stockholders the amount of their actual contributions, dollar for dollar." See, also, Thompson on Building Associations (2nd ed.), §289; *Chapman* v. *Young,* 65 Ill. App. 131.

In *Boice* v. *Rabb,* 24 Ind. App. 368, this court treated as insolvent an association which paid upon dissolution forty-six and two-thirds per cent. to the stockholders.

It is claimed that conclusion number ten, "that where said Harriet A. Bingham and others similarly situated held stock in said association at the time of the appointment of the receiver, said sums so wrongfully paid as dividends are a lien upon said stock and should be retained by said receiver out of the distributive share of the assets of said association belonging to said shareholders on account of their said stock, and said receiver should return such distributive portions back into the assets of the association until said amounts so paid as dividends are recovered to said association", is erroneous, for the reason that while the transaction between appellant and the association in question is named a purchase by her, or investment of stock, it was in reality a loan upon an express agreement of the association to pay a definite compensation for the use of the money so loaned until the same was repaid. The special findings show that by the

terms of the by-laws of the Equitable association it is expressly provided that paid up stock shall bear dividends at the rate of eight per cent. per annum payable semiannually; that the dividends shall accrue from the date of the certificate to the date of retirement or withdrawal; that at the end of one year the holder may withdraw the stock upon sixty days' notice, or the association may retire it upon like notice, and upon withdrawal or retirement the full sum paid therefor, to wit, $100 per share, together with all unpaid dividends, must be paid.

The terms of the by-laws of the Washington association touching said stock are similar. The so-called paid up stock was not assessed for and did not contribute in any way to the expenses of the association, and the indorsement on the certificate issued to the appellant shows that the percentage to be paid semiannually was fixed and definite and the guarantee absolute.

The terms of the by-laws make the loan fund applicable to the payment of all dividends, interest, loans made, and money borrowed; indeed, to the payment of everything except expenses. That being a loan, appellant would be entitled to her $2,000 with interest thereon, less the amounts paid, before anything can be paid to stockholders on account of stock held by them.

Counsel further insist that if it should be held that the transactions between the appellant and the association are not to be regarded as loans by her and she as a creditor, but that she is to be regarded as a stockholder, still the conclusion number ten is in violation of the rule of equity as applicable to the distribution of these assets, in view of the circumstances and proportions in which they were paid in. Paid up stock can not be considered as a loan. Upon this question, in the case of *Towle* v. *American, etc., Soc.,* 61 Fed. 446, the court said: "I am clear in the opinion that these certificates do not constitute promises to pay under the law merchant. Each plainly shows on its face what it is,

and is not calculated to deceive any one into the belief that it is simply an obligation to pay. I very much doubt, too, if the association would have the lawful power to borrow money upon its simple promises to pay, and the takers of the certificates must know the lawful power of the association. I am equally clear in the opinion that these certificates do not make their holders creditors of the company, as distinguished from the other members of the association. The certificates purport to be for stock. They are, in fact, if lawful at all, simply paid up capital stock. The distinction between the relation of their holders to the company and that of the other stockholders is simply that the ordinary stockholder pays in, during the period for which the association is supposed to run, his capital stock in periodical payments, while these holders have paid in their stock either wholly or partly in advance. The ordinary stockholder's profit for his investment depends upon the time the association runs, while the holders of these certificates have their profits in stipulated dividends as the time proceeds; but in both instances it is a case of profit upon money invested in the stock of the association—the common fund which constitutes the capital stock of the association. They constitute, at best, therefore, simply a different class of stockholders."

In the case of *Gibson* v. *Safety, etc., Assn.,* 170 Ill. 44, 48 N. E. 580, the holders of paid up stock sought to take the status of preferred creditors, contending that they had no right as stockholders. The court, in discussing the question, speaks as follows: "But the holders of that stock are in the anomalous position of themselves repudiating its validity, and thereby seek to obtain an advantage over those who are legal stockholders of the association. It seems to us unreasonable to say that these stockholders may be allowed to assert the illegality of the action of the building association to which they themselves were parties, and at the same time, by reason of that illegality, place themselves in a

better position than they would have been had their stock been valid. They bought paid up stock and paid for it. No one is questioning their right to the benefit of that stock, and clearly they can not be heard to do so. In case the whole of this paid up stock shall not be considered as a preferred indebtedness, plaintiffs in error ask the court to hold that the holders thereof be charged with monthly dues on the amount of their stock from its date, so that they may be placed upon an equal footing with other stockholders as to that part, and as to any excess they be declared creditors of the association and paid in full. In other words, their contention is, that if the whole of their stock cannot be paid in full as a preferred indebtedness, part of it may be. Certainly no good reason appears why the holders of paid up stock should be entitled to any more advantage as to this excess than they would be as to the whole of the stock."

In *State, ex rel.,* v. *Equitable, etc., Co.,* 142 Mo. 325, 41 S. W. 916, where paid up and prepaid stock was secured by a pledge of collateral from the assets of the association, the court decided that an association could not make such a pledge, and that the stock was not entitled to preference.

In the case of *Latimer* v. *Equitable, etc., Co.,* 81 Fed. 776, 782, the court held that a preferential right cannot be given to paid up stock, even though secured by the assets of the association, for the reason that it is so violative of the requirement of mutuality as to be void.

The question is discussed at length in the case of *Forwood* v. *Eubank* (Ky.), 50 S. W. 255, where the court denies the right, under the statutes of Kentucky, of building and loan associations to issue such stock in so far as it assumes to give a preference in case of insolvency. See, also, *Leahy* v. *National, etc., Assn.* (Wis.) 76 N. W. 625, in which it is held that the holder of prepaid stock is not entitled to rank as a creditor, but that the holder has no rights excepting the right incident to membership.

Thompson on Building Associations, at p. 247, 248, says:

"The decisions, in so far as they hold that it is in aid of the scheme for building associations to accept payments in advance of the current dues upon stock and to pay interest thereon are not subject to the criticism that such conduct would carry the association beyond its corporate scope. Indeed, it may be said, that judicial sanction of such an act enables the association to encourage thrift in the depositor and to assist the home-building membership. But it would seem that in constituting the member making the advance payments a preferred shareholder to that extent, the principle of equality that is fundamental in these institutions is lost sight of. If the shareholder is willing to pay ahead in consideration of the interest paid, it is difficult to see why he should be given greater security against the hazards of the enterprise than the member who is paying regularly. If the advance payment member is to be given priority in the distribution of the assets of an insolvent association, why cannot the paid up shareholder, by the same process of reasoning, be given the same status? The result would be that the ordinary member, in the marshaling of the assets, would be the last to be considered. There is grave danger in unduly expanding the scheme of building and loan associations. * * * In its equality of membership it is unlike general corporations. The legislature, in its first creation, stamped it as strictly mutual. The poor and illiterate classes were encouraged to support it, and it is poor policy that would subordinate their claims to a higher membership."

The fact that appellant gave notice of withdrawal in compliance with the by-laws before the appointment of the receiver would not place her in any better position than other stockholders. *Columbia, etc., Co.* v. *Tharp,* 24 Ind. App. 82, and cases cited. *Reddick* v. *United States, etc., Assn.* (Ky.), 49 S. W. 1075; *Forwood* v. *Eubank, supra; Leahy* v. *National, etc., Assn., supra.*

The position of appellant that she is entitled to interest, instead of dividends, can only be maintained upon the

ground that she was a creditor only, and not a stockholder. But she could have no right except that incident to membership. The weight of authority holds that although a corporation may guarantee to pay interest on certificates of stock, such interest can not be paid except out of the surplus profits and without injuring its capital stock. Clark on Corp., p. 340; *Painesville, etc., R. Co.* v. *King,* 17 Ohio St. 534; *McLaughlin* v. *Detroit, etc., R. Co.,* 8 Mich. 99.

Conclusions of law numbered respectively two, three, four, five, six, seven, eight, and nine are claimed to be erroneous. Reliance is placed upon the propositions set out as to the tenth conclusion of law, *supra.* These conclusions were (2) that appellant and others similarly situated were entitled to their dividends out of the net earnings or surplus in the treasury; (3) that when said sums were paid appellant as dividends, there were no net earnings or surplus in the treasury; (4) that the officers of the association had no right to impair the capital stock by the payment of dividends therefrom to any class of stock; (5) that the guaranty in the certificate and coupons held by the petitioner did not constitute an absolute liability for such stipulated dividends, but provided as a matter of law that such dividends would be paid, if there were, at the times of maturity, funds available and applicable to the payment of the same, said funds to consist of net profits or surplus; (6) that said assumed by-law, section thirty, did not and could not bind the officers to pay dividends out of the capital stock and thus impair said capital stock and render the association insolvent; (7) that said assumed by-law, section thirty, is arbitrary, illegal, and invalid, and has no support in the statutes of Indiana; (8) that the sums paid as dividends to said Harriet A. Bingham upon said paid up and prepaid stock and to all other shareholders in a similar situation were illegally and wrongfully paid, and that at the times said sums were paid as dividends said Harriet A. Bingham and others similarly situated were not entitled to said sums; (9) that said

sums paid as dividends to said Harriet A. Bingham and all others similarly situated were illegally and fraudulently paid by the officers of said association. We find no error in these conclusions.

The twelfth conclusion of law, to the effect that appellant had no right to withdraw her stock at the time said $500 was withdrawn, and that said sum should be treated as an advance upon her distributive share of the assets of the Washington Savings and Loan Association is claimed to be erroneous upon the ground that, when a stockholder had withdrawn his stock from a building and loan association, when not insolvent, but still a going concern doing business, a receiver afterwards appointed is not entitled to recover the amount of any part thereof paid on such withdrawal.

In finding thirteen the court found that a shareholder had no right to withdraw from an insolvent association, and that when a shareholder had made partial withdrawals from an insolvent association such partial withdrawals should be treated as an advancement on his account and be retained from the distributive share of said shareholder upon the winding up of the association.

Endlich on the Law of Building Assns. (2nd ed.), §§77, 78, says: 77. "As members of the corporation, all shareholders are, as to one another, liable to bear their respective proportion of the expenses of the concern. Being equally entitled, with all the others, in the direct ratio of his interest in the society, to share in the common gains of the enterprise, every member is liable to contribute, in the same proportion in which he expects to profit, to the losses and expenses incident to its management." 78. "Nor can he be allowed to withdraw from the association for the purpose of escaping his proportion of the common burden. Even when the statute gives members the right to withdraw, with certain privileges, upon certain notice given, this right is subject to modification, so as to prevent any member from taking advantage of his fellows. In other words, a member

cannot, by withdrawing, evade his proportionate share in the expenses, losses, and debts of the association."

In Thompson on Building Assns. (2nd ed.), §148, the author says: "While a withdrawing member is in a sense a creditor of the association, and can obtain judgment, yet, when the association was insolvent at the time of his withdrawal, he cannot compel payment of the money due from the asociation to the exclusion of the claims of general creditors or those of his fellow stockholders; for if the society is known to be insolvent, although proceedings may not have been taken to wind it up, the withdrawing rules cannot be invoked. But the association cannot withhold a part of his withdrawal on the ground of apprehension of the ultimate insolvency of the association, because of the liability to contribute; yet he cannot withdraw without considering losses, though they are probable, nor necessary expenses. The right to withdraw does not exist after the association is known to be insolvent." See, also, *In re Sunderland, etc., Assn.,* L. R. 24, Q. B. 394; *Choisser* v. *Young,* 69 Ill. App. 252; *Vincent* v. *Harrison, etc., Co.,* 5 Ohio N. P. 273; *Rickert* v. *Suddard,* 80 Ill. App. 204; *Musial* v. *Kosciusko, etc., Assn.,* 80 Ill. App. 464; *McGrath* v. *Hamilton, etc., Assn.,* 44 Pa. 383.

In the case of *Musial* v. *Kosciusko, etc., Assn., supra,* the withdrawing stockholder had secured judgment against the association for the value of his withdrawal, and the association, being insolvent at the time of the withdrawal, secured an injunction restraining an enforcement of the judgment on the theory that the stockholder was not entitled to any priority of judgment over his fellow stockholders and must share the losses. In this case the court speaks as follows: "It has been expressly held in this state that 'though judgments may be obtained against the association by members upon notice of intention to withdraw, yet the collection of such judgments may be controlled by courts of equity. Upon this point it is said in Endlich on Building Associa-

tions, §112: "The execution may be stayed temporarily if proper equities are shown, or permanently where it turns out the association was insolvent at the time of the actual withdrawal" '. *Chapman* v. *Young,* 65 Ill. App. 131. The association in the present case appears, from the bill, to have been thus insolvent at the time of the withdrawal, and, according to the authority last referred to, the execution against it may be permanently stayed. In *Gibson* v. *Safety, etc., Assn.,* 170 Ill. 44, it is said that 'notice of withdrawal from an insolvent society does not entitle members to priority of payment over their fellow stockholders.' * * * The object of the proposed levy and sale would be to appropriate property of the corporation to satisfy the judgment. The corporation is the trustee, the guardian and representative of all its stockholders, and is bound to protect them against any withdrawing member seeking a priority to which he is not entitled."

In the case of *Friel* v. *Gilbertson, etc., Assn.,* 1 Leg. Rec. Rep. 217, in deciding the same question, the court spoke as follows: "Where profits are made, no member of the association hesitates to take his proper share. Where losses occur, it is but just that every member should honestly and honorably pay his proportion of them. And this we understand to be the line of judicial decisions. In a case in its main features similar to the one in hand, the court said, 'But suppose the association made no profits and met with severe losses; shall the withdrawing members get back all they pay and cast the whole burden of losses upon those who remain, or who may not know of the losses and not be so quick in giving notice of withdrawal? Certainly not. That would be unjust and inequitable.' "

In the case of *Rickert* v. *Suddard,* 80 Ill. App. 204, a withdrawing member, whose notice had been given and whose withdrawal was made while the association was insolvent, received a check in payment of the face value of his stock. In the action to enforce payment of the check the

court refused to permit it to be paid from the assets of the association, and in deciding the case spoke as follows: "It is claimed that payment here has been fully made by the giving of the check, and that such payment controls. We think not. Whatever might be said of the right of appellant ordinarily, as against the drawer of the check, to the fund upon which it was drawn, yet it remains a fact that the check, given on account of a supposed obligation, which obligation did not equitably exist, was not presented while funds were in bank, and has not yet been paid, nor has the supposed obligation been satisfied. In this suit upon the intervening petition here, such payment of the supposed obligation is, in effect, sought to be enforced. In *Chapman v. Young,* 65 Ill. App. 131, it was held that although the shareholder seeking to withdraw had obtained judgment against the association, yet upon it being determined that the association was insolvent when his withdrawal notice was given, the collection of such judgment would be controlled by a court of equity, and that the character of his claim was not altered by the fact of obtaining judgment. In this case, in view of the insolvency of the association when the notice of withdrawal was given, and when the check was drawn, we hold that a payment should not in equity be permitted."

In the case of *Vincent* v. *Harrison, etc., Co.,* 5 Ohio N. P. 273, a member sought to withdraw from the association after it had sustained large losses in the depreciation of its securities. The court spoke as follows: "The evidence shows that at the time his withdrawal was filed with the company, the latter, although not insolvent, had sustained large losses by reason of the depreciation of its mortgage securities. Mr. Howell, a member of the company, can not by filing a notice of withdrawal, whether first or last on the list, escape his share of the losses, whether determined then, or later by the company."

Again, in the case of *Chapman* v. *Young,* 65 Ill. App.

131, in discussing the same question, the court speaks as follows: "No one would contend the right could be exercised after an association has been judicially declared insolvent and a receiver appointed, for the condition of insolvency is incompatible with the right of any member to withdraw his contribution to the general fund until his proportion of the losses has been ascertained and adjusted. In our view it is equally unreasonable to insist a member who, prior to such declaration of insolvency, but while the condition of insolvency in fact existed, gave notice of his intention to withdraw, should be deemed by the courts entitled to receive from the receiver out of the general funds more than his just proportion of the assets of the society. In such cases the basis of distribution is not that provided by the by-laws in the regular course of business of a solvent society, but the principles of equality and mutuality must prevail and control."

In support of her exception to conclusions of law numbered respectively eleven, thirteen, fourteen, fifteen, and sixteen, appellant relies upon the same proposition set out as to conclusion number twelve.

We have stated the thirteenth conclusion. The eleventh is to the effect that at the time the said $500 was paid as a withdrawal to appellant said Washington Savings and Loan Association was insolvent, and appellant had no right to withdraw and the officers had no right to pay said withdrawal.

The fourteenth, fifteenth, and sixteenth conclusions have already been set out in the opinion.

At section 514 of Endlich on Building Associations (2nd ed.), the author, in speaking of associations in liquidation, says: "The basis of distribution, in such cases, is not the rule of the association expressed in its by-laws, standing alone, but the supreme rule of equality and mutuality, and the controlling inquiry is the amount paid in by the member, not the date of the issue of his stock nor that of its maturity or of any notice to withdraw."

Mr. Thompson in his work on Building Associations, states the rule in the following language: "The basis of distribution of the assets of an insolvent association is not necessarily that of the by-laws in case of an insolvent society; but the distribution should be upon principles of equity, and to the end that all members bear equally and mutually their just proportion of losses. In case of insolvency, holders of paid up certificates are only entitled, like other members, to a share of the assets proportioned to the amount they have paid in. The adjustment of the affairs of an association which is being wound up by the court because it cannot carry out the purpose for which it was organized, and its members should proceed on the principle of rescission so far as the same can be equitably and justly applied; and each member should to that extent receive back what he paid, and pay back what he received." Thompson on Building Associations (2nd ed.), §300, p. 618.

In the case of *Towle v. American, etc., Soc.,* 61 Fed. 446, the court speaks as follows: "None of the liabilities or maxims, therefore, which apply to contracts between strangers are applicable to these transactions. The transaction of borrowing is not between strangers, or the result of contract or dealing, but is simply the execution of pre-existing rights among the stockholders. I think it plain that, when the condition of the association shows that, instead of making profits, it loses the principal of the contributing stockholders, there is power in a court of equity to wind up its affairs upon purely equitable principles."

The rule as laid down by Mr. Thompson and Mr. Endlich, as above quoted, has been affirmed and applied by this court in the case of *Boice v. Rabb,* 24 Ind. App. 368.

In *Huter v. Union Trust Co.,* 153 Ind. 204, our Supreme Court say: "If these borrowers and non-borrowers had been doing business through a duly authorized building and loan association, its insolvency would have abrogated the stock and loan contracts—the situation would be treated by

the courts as though the contracts had never existed—equity would administer, not according to the contractual relations of the parties, but according to their actual relations resulting from what they had done, and according to the nature and source of the fund and of the claims upon it. *Marion Trust Co.* v. *Trustees, etc.,* 153 Ind. 96."

In the case at bar, appellant drew dividends when there were no profits, and drew a portion of her capital when the association was insolvent. She is in court asking an equitable distribution of the assets of the association by the receiver. Under the rules as announced by the foregoing authorities her distributive share is to be ascertained by finding how much she has paid into the association and how much she has withdrawn therefrom.

Counsel for appellant in their able brief contend that for the purposes of litigation the receiver has only such right as the corporation could have asserted in its own name, and upon that basis only can he litigate for the benefit of either shareholder or creditor, except when acts have been done in fraud of the rights of creditors, but which would be valid as against the corporation itself, in which case he is deemed to hold adversely to the corporation the rights of creditors as against such frauds, and may litigate for such rights. Authorities are cited in support of this claim. The doctrine that the receiver of an ordinary corporation stands only for its creditors does not apply to building and loan associations. The receiver in such corporations represents not only creditors in the general meaning of the term, but he represents the stockholders, and he must adjust the affairs of the association equally among them. But in the case at bar, under the weight of authorities, the corporation would have the right to recover wrongfully paid dividends and the excess paid in withdrawals. In addition to authorities already cited, see, *Grant* v. *Ross,* 100 Ky. 44, 37 S. W. 263; *Grant* v. *Southern, etc., Co.* (Ky.), 47 S. W. 1091; Clark on Corp. pp. 353, 354, and cases cited; Taylor on Corp., §566;

*Williams* v. *Boice,* 38 N. J. Eq. 364; *Lexington, etc., Co.* v. *Page,* 17 B. Mon. (Ky.) 412; *Osgood* v. *Laytin,* 3 Keyes (N. Y.) 521; 2 Thompson on Corp., §2136.

To determine what each shareholder should receive, the receiver must ascertain what each has paid, what his share of the profits, if any; what his proportion of the losses, if any, have been incurred. Each must contribute his share of the expenses and his proportion of the losses.

If a stockholder should be allowed to retain money, the payment of which out of the capital stock rendered the association insolvent, and afterwards to prorate with the stockholders on the same basis with them, such distribution would be inequitable, and would eliminate the element of mutuality. To give a shareholder the advantage gained by either fraud or mistake would be inequitable.

In Cook on Stock and Stockholders, at p. 730, it is said: "If a dividend has been paid out of the capital stock, the shareholders are conclusively presumed to have known it and are liable in an action for repayment."

The copious quotations made from approved text-writers and from the opinions of courts of high repute may seem to have unduly lengthened this opinion. Their pertinency and clearness of expression justify them.

Not all the cases cited in briefs of counsel have been referred to, for the various reasons that the points decided are covered by other cases to which reference is made, and in others the questions or the facts involved were not analogous to those here presented.

A careful consideration of the questions presented, and so ably argued by opposing counsel, leads to the conclusion that the trial court directed the disposition of the assets of the association according to the recognized rule of mutuality and equality sustained by the weight of authorities.

Judgment affirmed.