### BOICE *v.* RABB, TRUSTEE.

[No. 3,195.  Filed Jan. 11, 1900.  Rehearing denied March 27, 1900.]

BUILDING AND LOAN ASSOCIATIONS.—*Insolvency.*—*Distribution.*—The basis for determining the value of the shares of stock of non-borrowing stockholders in an insolvent building and loan association is the amount paid the association as dues—not the amount to the credit of the stockholder in the loan fund, including dividends—and where dividends were declared and credited when there were no profits, such dividends should be disallowed, and when paid in cash should be charged as a lien on the stock upon which they were paid.

From the Marion Circuit Court.  *Affirmed.*

*L. C. Walker* and *A. Boice*, for appellant.
*J. E. Scott*, for appellee.

ROBINSON, J.—Appellant was a stockholder in the Mechanics Mutual Savings and Loan Association. In November, 1896, the association made an assignment to appellee for the benefit of creditors. In December following, appellee petitioned the circuit court for instructions upon various points relating to the administration of the trust. That portion of the order in question was as follows: "(3) The

several classes of stockholders should be permitted to prove their stock claims upon the same basis, so that they shall stand upon an equality in proportion to the sums paid in by them upon stock and to their credit in the loan fund account. The prepaid and paid-up stock are not to be given any preference over the running or instalment stock. The amount of the credit of each stockholder in the loan fund account should be the basis of the allowance of the claim in each instance, subject to any liens properly' chargeable against same, whether the member be a stockholder of running or instalment stock, prepaid or paid-up stock. In all instances in which dividends have been declared, when there were not profits or earnings out of which they were and could have been declared, and such dividends have been credited to the stock, or holder thereof, or paid to him in cash, such dividends when they have been credited, shall be charged off and disallowed, and when they have been paid to the stockholders in cash the same shall be charged as a lien upon the stock upon which they have been declared and paid, and the holder thereof shall be required to repay the same to the trustee, or, failing to do so, the trustee will, in his reports to the court, indicate the sum so charged against the stock on account of dividends so paid, so that, upon the orders of distribution made by the court, all such charges upon the stock may be deducted from the distributive dividends."

Appellant filed his claim, in which he stated that on May 25, 1894, he paid the association $1,000 cash upon twenty shares of capital stock, and received two certificates of stock, and two pass-books, upon one of which was credited $496, and upon the other $504; that within thirty days thereafter the association loaned this money, except $16 thereof, at six per cent. interest, and six per cent. premium per annum, both payable monthly in advance, and continued such loans until the assignment, which interest and premium the asso-

ciation received until the assignment, and since the assignment the trustee has received the same; that the association credited appellant upon its books with three dividends on his stock (January 1 and July 1, 1895, and January 1, 1896), aggregating $261.97; that the association, up to the assignment, settled with its withdrawing stockholders upon the basis of the book value of stock, paying to paid-up stockholders the full amount paid in by them, with interest, and to other stockholders whose stock had remained with the association thirteen months the amount paid in by them, less deduction for solicitor's and expense fund, together with declared dividends; that prior to the assignment the association received, as interest and premiums, $7,493, and interest and premiums due, about $1,000; wherefore he asks that his claim be allowed in the sum of $1,000 and the dividends less the $16.

Appellee answered, pleading the order of the court above set out, and that appellant's claim had been allowed in the sum of $946, which was the full amount of the loan fund credits for dues paid, less the part that went to the solicitor's and expense funds; that the total assets were $32,577.87, the preferred claims allowed and paid were $3,514.48, the unpreferred claims on stock filed and allowed were $37,-765.02, two dividends amounting to 46 2-3 per cent. had been declared and paid into court, and another dividend of 12 1-2 per cent. was ready; that the uncollected assets were $4,126.61; that of the $37,765.02 of claims on stock $5,-544, was allowed on claims on paid-up stock, and of the remaining sum of $32,221.02 the sum of $762.95 was on claims on stock subscribed after the expense fund was abolished in January, 1896, and $31,458.07 was on stock on which there had been deductions for the expense fund account; that, of the claims on running instalment stock filed and allowed in the $32,221.02, only $1,917.95 was on claims on stock that had never shared in the pretended dividends credited on stock; that the sum of $30,305.07 of

claims was on claims of stock which, like that of appellant, had shared in such dividends; that the total amount of dividends to holders of "running" stock was $2,634.15, and of the amount $261.97 was credited to appellant's stock; that at no time while the association was running were there any net profits out of which dividends could have been properly declared and credited to stockholders; that the association was insolvent at the time of the assignment; that the expense of various sorts exceed the full amount received from the expense fund, solicitor's fund, interest and premiums, fines for delinquencies, and other sources; and that the loans were made from time to time on insufficient securities.

After a trial by the court, and while the case was held under advisement by the court, the submission was set aside, and appellant moved to modify the order and instructions to appellee, which motion was overruled. Upon a resubmission, the court found that the allowance of the claim in the sum of $946 by appellee was right, and adjudged that the claim be allowed in that sum, and paid as other claims.

Appellant moved to modify the order above set out, as follows: "That the several classes of stockholders should be permitted to prove their stock claims upon the same basis, so that they shall stand upon an equality in proportion to the sums paid in by them upon their stock, respectively, and to their credit in the loan fund account, and the time the same was used by said association. The prepaid and paid-up stock should not be given any preference over the running and instalment stock. The amount to the credit of each stockholder in the loan fund, with any and all dividends declared and credited to his account on stock prior to the date of said assignment, should be the basis for the allowance of the claim or claims in each instance, subject to any liens properly chargeable against the same, as a basis for the payment of dividends in this assignment, whether the member be the holder of running or instalment stock, prepaid or paid-up stock. Second. In case such

dividends have been paid to any stockholder in cash, he shall be required to refund enough of the dividends so paid to him to equalize the claims and payments to all the stockholders, in case the assets of said association are not sufficient to pay all claims in full as herein provided."

The *ex parte* order could not, in any sense, be an adjudication upon the rights of stockholders, and, in fact, the order itself so provides. The question presented is not the respective rights of creditors and stockholders, but the rights of non-borrowing stockholders as among themselves. The fact that stockholders who withdrew before the assignment were allowed certain credits can not affect the status of stockholders at the time of the assignment. The relative rights of stockholders at the assignment should be determined, if possible, from the standing of each stockholder at that time. If the officers paid fictitious dividends to persons who are no longer members of the association, that fact can have no controlling influence in the closing up of the association as insolvent. As the association is insolvent, the question now is, not the rights of stockholders as against the association, but their rights as among themselves.

In Endlich on Building Assns., §514, the author says: "In short, the order prescribed by the by-laws of a building association for the payment of money out of its treasury to the different classes of holders of ordinary stock in the regular course of its business, does not apply to the distribution of its assets when insolvent; and neither would that order apply, in such cases, to the payment of different individuals in the same class of preferred stock. The basis of the distribution, in such cases, is not the rule of the association expressed in its by-laws, standing alone, but the supreme rule of equality and mutuality and the controlling inquiry is the amount paid in by the member, not the date of the issue of his stock nor that of its maturity or of any notice to withdraw."

The rule is declared that a borrowing member of an insolvent association must repay the amount loaned to him,

with interest, in the absence of contract, at the legal rate; and that he will then be entitled, after creditors are paid, to a *pro rata* dividend with the non-borrowing members for the amount he has paid on his stock. *Strohen* v. *Franklin, etc., Assn.,* 115 Pa. St. 273, 8 Atl. 843. See also *Rogers* v. *Hargo,* 92 Tenn. 35, 20 S. W. 430; *Leahy* v. *National, etc., Assn.,* 100 Wis. 555, 76 N. W. 625; *Post* v. *Building, etc., Assn.,* 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201. And it is also held that such borrowing member should be credited with payments of interest and premiums, so as to leave nothing but stock payments to be subjected to losses and expenses. *Marion Trust Co.* v. *Trustees, etc.,* 153 Ind. 96. It follows from this that the basis of a member's relation to the association as a stockholder is the amount he has paid the association as dues.

In arriving at a rule of mutuality and equality among non-borrowing stockholders, the first thing to be determined is the amount of dues the stockholder has paid in. The next question is whether, as a fact, that sum had been increased, or had suffered a diminution at the time of the assignment. This fact must be determined from the evidence. There is evidence that at no time while appellant was a stockholder were there any net profits out of which dividends could have been properly declared. This is, in effect, that no net profits accrued from any money paid in by stockholders, and hence no profits accrued to the association. Whether dividends were declared, by mistake or otherwise, does not appear. If the question were between appellant and the association, the latter would perhaps be estopped to set up its mistake in declaring the dividends. But appellant is not seeking to enforce any right as against the association, and we can look only to the actual facts as they existed at the time of the assignment.

Existing stockholders—those who were stockholders at the time of the assignment—are put upon an equality, so far as dividends are concerned, by the order providing that where dividends had been declared when there were no

Cleveland, etc., R. Co. v. Stewart.

profits or earnings out of which they were or could have been declared, and such dividends had been credited to the stockholder, or paid to him in cash, such dividends, when credited, should be charged off and disallowed, and when they had been paid in cash the same should be charged as a lien upon the stock upon which declared and paid. In thus not allowing the dividends it can not be said that one stockholder is profiting at the expense of another. If one has been a stockholder for two years and another for two months before the assignment, each has lost, for the respective period, the use of his money, together with any valid charges which he agreed, when he became a member, might be made against his stock. But neither has lost any of the money he paid in which went to the other's benefit. Neither profits from the other's loss. They both lose. But one loses more or less than the other simply because of the fact that he was a member of an insolvent association for a longer or shorter time. They both lose exactly the same if they became members at the same time. All that the older member loses in excess of the more recent member's loss was already lost when the latter became a member. We think the trial court's conclusion was right.

Judgment affirmed.