## Home Savings Association *v.* Noblesville Monthly Meeting of Friends Church.

[No. 3,954.   Filed February 20, 1903.   Motion to retax costs granted May 15, 1903.]

Building and Loan Associations. — *Liquidation.* — *Adjustment of Loans.*—Plaintiff, a borrower from a building and loan association, brought suit to have the amount of the mortgage lien ascertained and adjudged, demanding damages for breach of contract, and to quiet title upon payment of amount found due.  It appeared that plaintiff subscribed for sixty-five shares of stock, thirty-five shares thereof to be "cash shares," and thirty shares "coupon shares," on which it was to have a loan of $2,600 and pay fifty cents per share per month on the cash shares, and sixty cents on the coupon shares, for ninety-eight months in full payment of the loan, but the bond and mortgage were executed in accordance with the printed forms of the association, expressing a different contract.  The association accepted payments for a period of fourteen months in accordance with the agreement, and then notified plaintiff that it had suspended business, and refused to receive further payments.  *Held,* that the remedy sought by plaintiff is incompatible with the recovery of damages for the breach of the contract, and, in ascertaining the amount due on the loan, it not being properly disclosed whether the association was solvent or insolvent, the parties should be placed in the relation of debtor and creditor, and the borrower charged with legal rate of interest on the loan from the date of its execution to the time of the rendition of the finding, and credited with the amount paid as interest and premium, as treated by the association in distributing the same upon its books.

From Hamilton Circuit Court; *J. F. Neal,* Judge.

Suit by the Noblesville Monthly Meeting of Friends Church against the Home Savings Association.   From a judgment for plaintiff, defendant appeals.   *Reversed.*

*R. W. McBride, C. S. Denny* and *W. A. Bastian,* for appellant.

*S. D. Stuart, C. G. Reagan, A. H. Shirts, L. S. Baldwin, J. A. Roberts* and *Meade Vestal,* for appellee.

Black, P. J.—The appellee sued the appellant, a building and loan association, seeking to have the amount of

a mortgage lien ascertained and adjudged, demanding damages for breach of contract, and asking the quieting of the appellee's title upon payment of the amount found due from the appellee to the appellant. There was an answer in denial, and a cross-complaint seeking foreclosure was filed. No error is assigned relating to the pleadings. The court rendered a special finding, the appellant excepting to the conclusions of law. The appellant's motion for a new trial was overruled, the grounds of the motion insisted upon in this court being the insufficiency of the evidence; that the finding was contrary to law; that the court erred in the assessment of the amount of the recovery, in that the amount found due the appellant was too small; and that the court erred in the assessment of the amount of the recovery, in that it awarded damages to the appellee against the appellant.

The court found, in substance, that, the appellee being a religious corporation and the appellant being a building and loan association, each organized under the laws of the State, the former made application to the latter to become a subscriber to the stock of the association, and to borrow money thereon; that thereupon the parties entered into an agreement that the appellant was to issue sixty-five shares of its stock, of $100 per share, to the appellee and to lend the appellee $2,600; that thirty-five of the shares were to be shares commonly called "cash shares," and thirty shares were to be shares commonly called "coupon shares;" that the appellee was to subscribe for sixty-five shares of the stock, and was to execute a bond payable to the appellant in the sum of $2,600, as evidence of the loan, and was to assign all of the shares to the appellant as security for the sum borrowed; and as further security for the payment of that sum the appellee was to execute to the appellant a mortgage on certain real estate, described, then and still owned by the appellee, and the appellee was to pay to the appellant monthly on the stock and loan, fifty cents per

share upon the cash stock and sixty cents per share upon the coupon stock; and that on account of the excess of stock over and above twenty-six shares, the number of shares representing the loan, the payments so to be made were to be in lieu of and in full payment of the five per cent. premium upon each share for preference and priority in procuring the loan, usually paid by stockholders, and of six per cent. interest per annum upon the loan; and that all the payments were to be made monthly to the appellant's authorized agent at Noblesville, Indiana; and it was further agreed that upon such payment for ninety-eight months upon such cash stock, and ninety-eight payments upon the coupon stock, the loan would be fully paid, and no further payments would be required thereon.

It was further found that, pursuant to these agreements, on March 22, 1897, the appellee subscribed for sixty-five shares of stock in the association, which were duly issued to the appellee by the appellant, and at the same time the appellant loaned the appellee $2,600, and paid the appellee the full amount thereof, except the sum of $35.50, the first monthly payment so agreed to be paid, which was retained by the appellant in full of such first payment; and the appellee at the same time pledged the said shares of stock to the appellant, and executed a mortgage upon said real estate, securing the loan, and also signed a bond in the sum of $2,600 as evidence of the loan; but that by mutual mistake of the parties they used, and the appellee by its trustees signed, a printed bond and mortgage such as were commonly used by the appellant when taking security from stockholders for loans made, but which did not correctly set out the contract so made between the parties as to payments on said stock and loan, but contained many stipulations other than as to such payments and the amount thereof; that the bond contained stipulations as to the payment of premiums on the shares and interest on the loan, neither of which was agreed to by the parties in making

said contract, but which was in said bond through the mutual mistake and inadvertence of the parties in using printed forms of bonds and mortgages commonly used by the appellant in making loans to stockholders; that in pursuance of and in accordance with the actual agreement and contract between the parties, the appellee paid the appellant fourteen monthly payments, including the first payment retained, on the sixty-five shares of stock, of fifty cents per share on each of the thirty-five shares of cash stock and sixty cents per month in coupons on each of the thirty shares of coupon stock, making a total of $17.50 per month in cash and $18 per month in coupons—in all $35.50 per month on said loan; that appellant during this period of fourteen months accepted from the appellee said sum of $35.50 per month in full of all payments due thereon, and during that period never demanded from the appellee any other or different sum in discharge of its monthly payments on the loan; that upon the fourteenth payment, in April, 1898, the appellant notified the appellee that the association had suspended its business, and that it had decided to wind up its affairs, and would not receive further payments from the appellee in accordance with the terms of the contract or otherwise, and returned to the appellee $5.54 on account of overpayment on coupon stock and $4.88 on account of overpayment on cash stock; that the distinguishing feature of the coupon stock was that the association made arrangements with certain merchants in all lines of business in Noblesville and Indianapolis and different towns and cities in which it expected to do business, by which the merchants were to give to their cash purchasers certain coupons prepared and arranged and furnished by the appellant, which represented upon their faces different money values, and were given by the merchants to their cash purchasers in five per cent. of the amount of such purchases; and upon presentation of these coupons to the association by its coupon stockholders it

would honor the coupons at their face value, and give credit to such stockholders upon their coupon stock as cash at such face value, and any number of coupons representing in the aggregate on their face sixty cents in value would pay the amount payable upon such stock for one month; and of the sixty cents per month thus paid on each share of coupon stock the sum of ten cents was deducted by the appellant to pay expenses in collecting coupons from merchants and to pay expenses of issuing the coupons, and of the sixty cents per month thus paid by the appellee the sum of fifty cents only was credited upon the books of the appellant, and of the fifty cents thus credited to the appellee a further sum of ten cents on each share was deducted to pay the ordinary expenses of the association, making a total of such ordinary expenses on the thirty shares of stock of $3 per month.

It was further found that at, or soon after, the time of the notice of the appellant to the appellee that it would not receive any further payments from the appellee, and after the fourteenth payment was made, and before the fifteenth payment fell due, and notwithstanding such notice, the appellee offered to continue payments upon the stock and loan "in accordance with the terms of their said agreements," but the appellant refused to receive the same, and refused further to carry out the terms of the contract, and demanded the payment in full at once of the entire sum so borrowed, together with a large sum in excess thereof, and was so demanding up to the time of the bringing of this suit; that the appellee was not delinquent in any of its payments, but had fully complied with all the terms of the contract; that the appellee, being a religious organization, had no funds of its own with which to pay the loan, and, in order to meet the payments as they became due, was compelled to distribute and did distribute the payments among the divers members of the church, and by agreement between the parties the members of the church

were to patronize and did patronize the merchants. designated by the appellant, and received coupons upon cash purchases as herein described, and turned over such coupons to the association in full of coupon payments ánd cash for the cash payments, and on account of such agreement the appellant distributed pass-books among such members of the church as had agreed to keep up their respective payments on the loan in such manner, and thus and not otherwise appellee was to keep up and did keep up such payments; that one of the inducements held out by the appellant to induce the appellee to subscribe for the stock and to borrow the money, which was one of the inducements which caused the appellee to subscribe for the stock and to borrow the money, was what was known as the "coupon feature" of the association, heretofore described, by means of which the members of the church could keep up such payments, as they became due, on the coupon stock, without any cash expense upon their part except that of taking coupons when making cash purchases of the merchants; that by the terms of the agreement between the parties, the appellee was to pay the appellant a total sum of $1,750 in cash in ninety-eight equal monthly instalments, and a total of $1,728 in coupons in ninety-six [ninety-eight] equal monthly instalments, the same to be in full payment and liquidation of the loan; that the actual amount owing by the appellee to the appellant on account of the loan at and after the time the appellant gave the appellee notice that no more payments would be received, was, and ever since has been, unsettled and in controversy between the parties; that the appellant received said fourteen payments without objection as to the amount being in full of all payments in any way due, both parties during that time in good faith believing that the contract so entered into had been properly and correctly set out in said written agreement.

The court further found, that the appellee had paid the appellant in such monthly payments the total sum of $102

as dues on the stock, the sum of $328.21 as premium and interest on the loan, and the sum of $34.17 expense account, said amounts being credited on the books of the appellant as so much paid by the appellee into said respective funds; that upon calculating interest at the rate of six per cent. upon the loan from the time of receiving it by the appellee, and crediting said payments, exclusive of dues paid, upon the method of partial payments, there was, at the time of receiving said notice, owing by appellee to appellant $2,400; that appellant was not entitled to recover interest from and after the time it refused the monthly payments; that the appellee had been damaged $150 by reason of the violation of the contract by the appellant, which should be deducted from said sum of $2,400, leaving $2,250 as "the amount which plaintiff now owes defendant;" that the appellant at the time of the institution of this suit was claiming a lien on said real estate by virtue of the mortgage, in a sum largely in excess of the true amount owing the appellant by the appellee; that such claim constituted a cloud upon the title of the real estate adverse to appellee's title; and that the appellee was entitled to have its title quieted against the appellant as to such excessive claim. The court made the bond and mortgage part of its finding by reference to the copies thereof made parts of the pleadings.

The bond was an obligation to pay $2,600, reciting that the appellee had subscribed for sixty-five shares of stock, of $100 each, in the association, for which shares it received from the association $2,600 as a loan, and which shares it thereby transferred as collateral security for the payment of the bond, with agreement on the part of the appellee that it would continue to pay the monthly dues and expenses on the shares of stock at the rate of fifty cents per month on thirty shares and sixty cents per month on thirty-five shares until the shares should mature, at which time all of the loan should become due and payable;

and with the further agreement that appellee should pay a premium of five per cent. per annum upon each share for preference and priority in procuring the loan, and interest at the rate of six per cent. per annum upon the loan, all to be paid monthly, at, etc. The bond was conditioned for the performance of the agreement of the appellee and the payment by it of the monthly dues, expenses, fines, assessments, premiums, and interest until the shares should mature, together with the loan; it being stipulated that upon default in any of the agreements all the loan should become due and payable, and the appellee should forfeit all dues and dividends credited to the shares of stock, and all premiums, fines, and interest it had paid upon the loan, and should pay the association $2,600 with six per cent. interest and five per cent. premium from the date of the default, etc. The mortgage, as part of its terms, recited the provisions of the bond to secure the payment of which it was given.

The court stated as its conclusions of law, that the appellee was liable to the appellant in the amount of money borrowed, with six per cent. interest from the time it was paid to appellee until the appellant gave notice that no further monthly payments would be received, and was entitled to monthly credits as partial payments thereon in the total monthly amounts paid as premiums, interest, or expense account; that the appellee was not entitled to any credits on the loan by reason of the amount of dues paid; that there was owing the appellant by the appellee at the date of the refusal to receive further payments $2,400; that the appellee was entitled to recover damages of the appellant for violation of the contract by the appellant, as found by the court, $150, and was entitled to have this sum set off against the amount owing to the appellant; that the appellant was not entitled to interest from the time of giving said notice that it would not receive monthly payments until the date of the finding; that there was owing to the appellant by

the appellee $2,250; that the appellee was entitled to have its title quieted to the real estate in question as to any claim of the appellant in excess of $2,250; and that the appellee should recover costs, and the appellant should take nothing by its cross-complaint to foreclose the mortgage.

Where a building and loan association has become insolvent, and a receiver has been appointed to wind up its business, the incapacity of the association to perform its contract with a borrowing member relieves the latter of his obligation to continue to make his periodical payments according to the contract, and all members are relieved from the payment of dues, and the amount for which the borrowing member is liable is determined upon the equitable principle of adjusting the losses with equality among the stockholders, and not by the terms of the contract, which is treated as abrogated. In such case, the borrowing member is bound to pay the amount borrowed by him, with interest thereon at the rate fixed by statute for the loan or forbearance of money when no rate has been fixed by contract, less deductions, which have varied in different jurisdictions. The rule adopted in this State as being most equitable concerning these deductions is, that the borrowing member so charged with the amount of his loan and such interest thereon (at six per cent. per annum) shall be allowed as credit thereon all the interest that he has paid upon the loan in periodical instalments and all the premiums paid by him as a borrower, such amounts being credited as partial payments upon the debt for money had and received; but the dues paid periodically on the pledged shares of stock by the borrower in his capacity of stockholder are not treated as partial payments on the loan, and are not deducted from the amount of the loan. *Marion Trust Co.* v. *Trustees Edwards Lodge,* 153 Ind. 96; *Huter* v. *Union Trust Co.,* 153 Ind. 204; *James* v. *Sidwell,* 153 Ind. 697; *MacMurray* v. *Sidwell,* 155 Ind. 560, 80 Am. St. 255; *Columbia Finance, etc., Co.* v. *Tharp,* 24 Ind. App. 82; *Boice* v.

*Rabb,* 24 Ind. App. 368; *Bingham* v. *Marion Trust Co.,* 27 Ind. App. 247. To give the borrowing member credit upon his mortgage for his payments of such dues upon his stock would enable him to escape responsibility for his proper share of the losses, which would thus be thrown upon the non-borrowing members.

The value of the stock can not be ascertained until the affairs of the association are so far adjusted and wound up as to obtain a basis for calculation. The borrowing member will be entitled, after the debts are paid, to a pro rata dividend with the non-borrowing members for what he has paid as dues on his stock. Also, where a building and loan association has gone into voluntary liquidation, in a suit by a borrowing member to quiet title to the mortgaged premises, she having tendered and brought into court the amount admitted by her to be due upon her note, after referring to the rule as above indicated for adjustment of the borrowing member's liability in case of an insolvent association in the hands of a receiver, the court said: "The consequences of a winding up of a solvent association by a voluntary liquidation are quite as fatal to the expected advantages of the investment and loan as if the business of the corporation were brought to a standstill by insolvency. A loss of a proportionate share of the prospective profits by the borrowing member is the necessary result of the final suspension of the business of the association." *Fidelity Building, etc., Union* v. *Smith,* 155 Ind. 679. And it was held that in such case, the objects for which the association was organized having been abandoned, the borrowing members were released from their obligations to continue the periodical payments under the contract. The same equitable rule of adjustment as in case of an insolvent association was recognized; and as to payments made by the plaintiff after the association went into liquidation, including interest, premium, and dues, she was entitled to have them all applied on her debt. In such case the con-

tract is abrogated, and the parties cease to be controlled by its provisions. The advantage contemplated, of eventually paying off the loan by the small periodical instalments' and the profits from the accumulation of the business of the association, having been rendered impossible of attainment by the borrowing member, he could not equitably be required to continue to make such payments as specified in the contract. As a borrower of money, he should be required to pay it, and can not rightfully have his land released from the lien of the lender thereon without repayment of the money so had and received. The interest, as well as the premium, stipulated in the contract, can not equitably be exacted, because of the failure of the peculiar consideration therefor; but the borrower ought to pay such interest as the law exacts, in the absence of a special contract, for the use of the money.

In this case the court did not make any disposition of the share of interest in the assets of the association of the appellee as a stockholder, it being the apparent expectation that the appellee eventually, upon the payment of the debts of the association and the adjustment of the rights of the stockholders among themselves, will derive any benefit to which it may be entitled from its payment of dues as a stockholder by receiving a pro rata dividend, if any, with the borrowers and non-borrowers.

If the affairs of the association were in the hands of a receiver, a party to the proceeding, there would seem to be no good reason why the present value of the borrower's shares of stock could not be ascertained and applied as a credit upon the loan; at least if so desired by the debtor. Perhaps, also, in such a case, brought against an association in liquidation, if the affairs of the association were in a condition admitting of the ascertainment of the pro rata share of the plaintiff in the assets on final distribution with sufficient certainty, and the plaintiff desired the application of such value of his stock upon his debt, it

would not be improper so to proceed to make an end of the matter in the manner above suggested in case of a receivership. The action here is between the borrower and the association, initiated by the borrower, asking to have the amount due from it on its loan ascertained and adjudicated, and to have its title quieted upon payment of that amount, with no request to have the value of the shares of stock ascertained, and applied to the appellee's credit; such matter being left, apparently, to the future adjustment of the affairs of the association among the stockholders.

The condition created by the action of the association, detailed in the finding, was treated by the court as equivalent, in effect, to a complete suspension or dissolution of the association, and the appellee, in its character of borrower, was left in the situation of a borrower whose loan was secured by mortgage on his land; but the peculiar obligations which would have rested upon him as a borrowing member in default of a solvent, going association, itself not in default, were treated as abrogated, and he was held liable for the money actually received by him, with six per cent. interest thereon, and entitled to be credited with the instalments of interest and premium paid by him as partial payments as of the date of payment. He would, also, be entitled to share pro rata with the stockholders on final adjustment and distribution of the assets remaining after the payment of debts.

It does not clearly appear from the finding that the association is insolvent, or in process of liquidation, and we can not treat the evidence as properly before us for examination; for, if it may be said that the bill of exceptions containing the evidence is in the record, the appellant has failed to comply with the rule of court in relation to marginal notes in the bill.

The association's ordinary blank forms of bond and mortgage appear to have been used, without alteration, to carry into execution the arrangement agreed upon by the parties,

who understood such purpose to be thereby effectuated; and for more than a year both parties carried such arrangement into effect, and by their conduct indicated their understanding of the contract. During that long period a certain amount, being the aggregate of the dues specified in the written instruments, was paid and accepted and distributed to the various funds of the association. After such practical construction of the contract by the parties for so long a period, it would seem that the appellant's subsequent insistence upon the adoption of the language of the written instruments so far as they were in disagreement with that construction would be so inequitable as to amount to a fraud against the appellee.

If it be true that the appellant at the time of the trial was a solvent association, not in course of liquidation, the conduct of the appellant, shown by the finding, in notifying the appellee that the association had suspended its business, and had decided to wind up its affairs, and would not receive further payments in accordance with the contract or otherwise, and in returning money which had been paid in by the appellee as being overpayment, and in refusing afterward to receive further payments offered by the appellee, and refusing to carry out further the terms of the contract, and demanding payment in full of the amount borrowed, with a large sum in excess thereof—the appellee having fully complied with the contract except as so prevented—would be a sufficient reason for a demand on the part of the appellee for the adjustment of the account between the parties, on the theory that the contract had been so far abrogated by the wrong of the association that the parties should be remitted to the relation of one indebted to another for money had and received, the mortgage lien still existing; and in such case it would seem that in the adjustment of the amount due the present accrued value of the stock ought to be ascertained and deducted from the amount, as well as the interest and premium paid, and that

the lien should be enforced for the balance. On this question, however, the case does not require a decision. While there is some obscurity, the court seems to have proceeded upon the theory—possibly supported sufficiently by evidence—that the association was actually in the course of liquidation, and treated the case as one wherein it was proper to leave the value of the stock out of consideration.

The court recognized and applied the theory practically applied by the appellant to the contract relation of the parties, from the beginning of that relation until the enforced cessation thereof, by apportioning the aggregate payments, which were made and accepted without objection, among the several funds, applying a portion with reference to one class of stock by distributing it as stock dues and as interest and premium, and applying another portion with reference to the other class of stock by distributing it as stock dues, expenses, and interest, and premium. The appellant could have no well founded objection to the action of the court in treating the contract as it had always been treated by the appellant.

But the matters considerably discussed by counsel relating to the question as to the true character of the contract, whether it was correctly represented by the terms of the written instrument, or was such as was indicated by the conduct of the parties in carrying this contract into effect for fourteen months, becomes of no consequence, in view of the fact that whatever its character as a contract between a building and loan association and its borrowing member, its peculiar and characteristic stipulations concerning the loan must be treated as abrogated, and the parties must be regarded as remitted to the simple relation above indicated.

We can not reconcile with accepted principles the award of damages in the sum of $150 because of the supposed loss to the appellee through its deprivation of the advantages which would have accrued from the continued carry-

ing out of the contract by reason of the convenient methods provided therein for paying dues on its stock.

Under the decision reached by the trial court the appellee was not deprived of its rights growing out of its ownership of that stock, but was left to take, pro rata with other stock-holders, any benefit derivable from the payment of dues thereon. The whole benefit claimed by the appellee and awarded to it by way of being relieved from payments pursuant to the contract and being permitted to repay the money received, with legal interest, and of receiving credit on the loan for all partial payments, presupposes such abrogation of the contract as would be inconsistent with the award of damages for the loss of such benefit expectant upon the fulfilment of the contract according to its terms. In connection with such acceptance of the abandonment of the contract rights and obligations, the appellee can not be thus awarded damages as for the breach of the contract.

The appellee has sought a remedy incompatible with recovery of damages for such a loss, which would involve the recognition of the vitality of the contract, which, upon the principles applicable to the situation, must be regarded as abrogated, the parties having to each other, with reference to the loan, the relation of a debtor owing for money had and received to a creditor holding a lien on the land of the former, while as to the coupon stock in question the appellee continues to have such interest in the assets of the association as belong to all the other holders of such stock. Being thus remitted to the relation of debtor and creditor, the former owing the latter simply the amount of money actually received, with interest thereon, we see no sufficient reason why the obligation for interest should not extend to the time of the rendition of the finding, as in other cases where such relation exists, and there has been no tender, kept good by bringing the money into court; and in this respect, also, we are unable to uphold the court's conclu-

sions.    See *Hinman* v. *Ryan,* 3 Ohio C. C. 529; *Twin Cities, etc., Assn.* v. *Lepore,* 17 Pa. Co. C. 426.

The court not only concluded that the appellee was entitled to credit for the instalments of interest and premium paid, but also treated the amounts paid and apportioned to the expense account as partial payments on the debt. We think, however, that the borrowing member was not entitled to credit, except for the payments which he made in the character of borrower, and that the sums appropriated to the expense fund should have been classed with those denominated in the finding as "dues," and as to such payments the appellee should stand in the situation occupied by all shareholders, whether borrowing members or investing members of the association. The amounts appropriated to expenses were devoted to the maintenance of the association, and by the payment thereof the interests of all the stockholders, as such, were conserved; and such contributions were incidental to the holding of the coupon stock, and not to the advancement of the loan.

We are of the opinion that in such a case as this the court should designate a period, such as it may regard as reasonable, within which the plaintiff shall pay in to the clerk the amount determined to be due from the plaintiff, and should provide for the enforcement of the lien by sale of the land upon failure to make such payment within the prescribed period.

The special finding does not state the facts with such particularity and certainty as to furnish a basis for the correction of the conclusions of law so as to make them agree with the views expressed by us in this opinion.

The judgment is reversed, and the cause is remanded for a new trial.