PINE BLUFF BUILDING & LOAN ASSOCIATION *v.* THALHEIMER.

## Opinion delivered January 28, 1905.

1. BUILDING AND LOAN ASSOCIATION—WINDING UP SERIES PREMATURELY.— Where, by the mistake of the president and secretary of a building and loan association, a series of stock was wound up five or six months before it was entitled to mature, stockholders who were thus relieved from fulfilling their obligation to pay until the stock was worth face value could not profit by the mistake of their agents, and will be compelled to make restitution.   (Page 66.)

2. SAME—EFFECT OF PREMATURELY WINDING UP SERIES.—The action of the officers of a building and loan association in prematurely cancelling the stock of a borrowing member and satisfying his mortgage did not relieve him from further obligation, either to mature his stock or to pay his mortgage, as the demand of further payments was a recognition of his continued status as borrower and stockholder.   (Page 66.)

3. SAME—LACHES.—Where a building and loan association, within a year after discovering that a series of stock had been prematurely wound up, brought suit against one of the borrowing stockholders of such series to foreclose his mortgage, and three years later an amendment to the complaint was filed asking the cancellation of the entry of satisfaction of defendant's mortgage, no intervening rights having accrued, the suit was not barred by laches.   (Page 67.)

4. WINDING UP OF STOCK PREMATURELY—SETTLEMENT.—Where a series of building and loan stock was prematurely closed, the series was not responsible for any subsequent losses or expenses, nor entitled to share in any possible profits; the amount short of full payment to mature his stock being the amount which a stockholder will be held to pay, with six per cent. interest from the date of the premature closure until judgment.   (Page 67.)

Appeal from Jefferson Chancery Court.

JOHN M. ELLIOTT, Chancellor.

Reversed.

STATEMENT BY THE COURT.

On the 15th of July, 1890, I. A. Thalheimer became a stockholder in the plaintiff corporation, a building and loan association, and on the 31st of July, 1890, he became a borrower therefrom. He was a member of series 3, and executed the usual building and loan contract, agreeing to make the stated payments until the stock matured, in that way repaying the advancement. The contract was secured by mortgage on real estate, in which his wife, Henrietta Thalheimer, joined. In April, 1896, at the end of 70 months of the existence of series 3, the secretary and auditor declared its stock matured and closed it, paid the investing stockholders, and cancelled the loans of borrowing stockholders. There had been no meeting of the board of directors since April 23, 1896, and this action was predicated entirely on the secretary's and auditor's statement. The president joined the secretary in satisfying of record the mortgages, this one being satisfied August 31, 1896.

There was no express authority from the board, and none given in the by-laws, for the president and secretary to satisfy mortgages; but this course seemed to have been customary. The secretary says that in January, 1897, in checking over the books, he found that series 3 had been prematurely closed. On the 4th of March, 1897, there was a meeting of the board of directors, a new secretary was elected, and on the 9th of March, 1897, the board selected an expert building and loan accountant to examine its books. On the 27th of April, 1897, the accountant reported fully the status of the association to the board, and his report was accepted as a true statement of its condition. He found that series 3 was closed prematurely by five or six months. He also found the former secretary short in his accounts to the extent of about $2,500.

The association called upon the investing stockholders to repay the overpayments, which in all instances, except when they were insolvent, was done. The borrowing stockholders were likewise called upon to make good the difference between the face of their loans and the value of their stock, as found by the expert. On the 28th of March, 1898, the association brought suit against Thalheimer for the amount it claimed he owed in

order to have his loan discharged, and asked foreclosure of the mortgage to satisfy the same. Thalheimer answered, pleading payment of the loan and satisfaction of the mortgage.

On the 6th of December, 1901, the case came on for trial, and the court permitted the plaintiff to amend its complaint by adding an allegation that the satisfaction was made by mistake and asking its cancellation. After the court overruled a motion to strike out this amendment, the defendant answered it to the effect that the satisfaction was made with full knowledge of the board of directors, or, if not authorized, had been acquiesced in, and pleaded laches and negligence against plaintiff in seeking at this late date to cancel the satisfaction of the record. Judgment for the defendant, and the association brought the case here.

*Austin & Danaher,* for appellant.

The association was not bound by the unauthorized act of the secretary in declaring said series closed and the act of the president and secretary in indorsing satisfaction of said mortgage on the margin of the record. 62 Ark. 33. There is no estoppel of the appellant to question the satisfaction. 106 Pa. St. 262. The entry of discharge of a mortgage may be rebutted. Wiltsie, Mortg. Forecl. 493; 23 Me. 388; 24 Pa. St. 47; 55 Wis. 607; 14 L. R. A. 356; Moraw. Corp. § 537; Cook, Stk. & Stkhlds, § 716.

*White & Altheimer,* for appellees.

The action of the president and secretary of the association became a contract of the association, which it will not be allowed to deny. 37 S. W. 218; 67 Ark. 550. The depositions of Clark, Parker and Murray should be suppressed because there is no issue in any of the pleadings as to mistake or fraud, either in maturing the stock or in entering satisfaction of the mortgage. 41 Ark. 400; 46 Ark 103. The mistake, if any there was, should have been promptly asserted in the pleadings, as soon as discovered. 15 Am. & Eng. Enc. Law, 633, 634; 14 Enc. Pl. & Pr. 41; 150 U. S 634. The company is bound

by the acts of the president and secretary. Big. Estop. 607, note 3. 4 Am. & Eng. Enc. Law, 1914; 62 Ark. 7; 67 Ark. 551; 37 S. W. 318. Satisfaction of a mortgage on the records is *prima facie* evidence of the validity of such satisfaction. 42 Ark. 57; 2 Jones, Mortg. § 969; 4 Am. & Eng. Enc. Law (2d Ed.), 1033. An unexplained receipt is conclusive between the parties. 19 Am. & Eng. Enc. Law, 1122. As to when reformation of mistake will be ordered by equity, see 15 Am. & Eng. Enc. Law, 628, 629, 630, 631, 632; Thomp. B. & L. Assn. § 147*n*, p. 284.

Hill, C. J., (after stating the facts.) The series of the association of which Thalheimer was a member was prematurely wound up by the secretary before the stock matured. The board of directors did not act in the matter, and the actions of the other officers in assenting thereto and attempting to effectuate the closure were perfunctory. About a year later it was discovered that the secretary was short in his settlements, and the series matured five or six months before it was entitled to have been matured. It was then impossible to rehabilitate this series into a going concern. The premature closure of it relieved the stockholders in it from fulfilling their obligation to pay until the stock was worth its face value, and thereby reduced, *pro tanto,* their burden of the expenses and losses of the association. This is contrary to the mutuality in profits and losses which is the dominant feature in building and loan contracts. The action of the officers in doing this was the action of the agents of all the stockholders, and the stockholders in this series could not profit by the mistakes of their agents in giving them a preference over other stockholders. Therefore it follows that equity. which works equality, would compel these stockholders to make restitution.

It is insisted that the action of the officers in cancelling the stock and satisfying the mortgage cut off Thalheimer from his rights as a stockholder, and relieved him from further obligations to either mature his stock or pay his mortgage. This is a mistake. When the association demanded further payments of him, that was equally a recognition of his continued status as borrower and stockholder, so far as winding up this series was concerned, and he was entitled to all his rights as stockholder

until he discharged his stock by paying its face value. The association would have been estopped from questioning his status as stockholder, had he asserted his rights and privileges.

It is contended that the association lost its rights by negligence and laches, and especially its rights to a cancellation of the entry of satisfaction, which was not specifically claimed until the amendment to the complaint was filed at the hearing, about five years after the entry was made. It seems the association demanded payment as soon as it discovered the situation, and enforced repayment, so far as it could, without suit, and this suit was brought within a year thereafter. There is no showing why the suit was so long continued in court, but no rights could be, or were, built up during its pendency which rendered the repayment an injustice, or changed the status of any party. The amendment, while coming late, presented no new phase of the controversy, and it was not an abuse of discretion to allow it to be made at that time. It follows that the judgment must be reversed.

It does not satisfactorily appear that the correct amount is demanded of Thalheimer. It seems that the amount is ascertained from a computation based entirely on payments to become due from borrowing members, and it does not appear that the series was not to be responsible for losses and expenses after it prematurely terminated. The court on a retrial must ascertain the exact status of the series at the time it was mistakenly closed. The amount short of full payment to mature the stock is the amount which Thalheimer should pay, which amount should bear 6 per cent. interest from that date until judgment. No possible profits can enter into it, for the series was disabled from earning profits from that time. This excludes any burdens accruing after the time when the series was mistakenly closed, because it had gone out of existence, and its members had no further control or voice in the management until the error was discovered, and then only for the purpose of winding up properly what had been improperly wound up.

The case is reversed and remanded, with directions to proceed to ascertain the amount due, as herein directed, and to foreclose in satisfaction of the same.

BATTLE, J., did not participate.