## No. 13,282.

## McPherson et al. *v.* Railway Savings and Building Association.

(25 P. [2d] 388)

Decided July 8, 1933. Rehearing denied September 25, 1933.

Mr. John W. Elwell, for plaintiffs in error.

Messrs. Adams & Gast, Mr. Sam Parlapiano, for defendant in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court

This is a test case brought by S. G. and Laura V. McPherson, in their own behalf and in behalf of other shareholders similarly situated, against the Railway Savings and Building Association, referred to herein as the association. The plaintiffs prayed for a decree requiring the association to recognize its capital liability to them in the sum of $7,811.93 on the stock they now hold, and restraining the association from charging against the capital account of the plaintiffs any part of the moneys paid to them in maturing other shares "formerly" owned by them. The association filed an answer; the plaintiffs demurred thereto; their demurrer was overruled; they stood upon the demurrer; and the court thereupon dismissed the suit.

Upon the application of the attorney general, the court had appointed a receiver. Thereafter, the court granted the receiver's petition for a decree "to effect the readjustment" of the affairs of the association and to terminate the receivership. The court held that before any distribution of the assets could be made to shareholders, the association's capital liability to shareholders must be determined and the relative equities of the shareholders adjusted in accordance with the directions in the decree; that as that would be a lengthy task and would not require supervision by the court, there was no reason for withholding from the board of directors the control of

the association's affairs. The court decreed, in part, as follows: "The capital liability of The Railway Savings and Building Association to each of its shareholders is the amount paid in by each member plus his proportionate share of earnings that should have been credited to his stock, but was improperly paid to other stockholders who are now members of the Association, minus so much of so-called dividends received as were in fact withdrawals of capital; and the Association and its officers are directed to so determine the amount of its liability to each of its members. In adjusting these capital accounts, the stockholders shall be credited with their proportionate part of semiannual earnings and their shares in the earnings for the following period computed on their thus increased interest in the Association's capital.

"In making these adjustments, the Association and its officers shall not go back more than five years prior to July 6, 1932."

That decree is pleaded in the answer, not as res adjudicata, but merely as explanatory of the action of the board of directors. The receiver was discharged and the duties ordinarily performed by a receiver were cast upon the board of directors. The board proceeded to perform those duties in accordance with the terms of the decree, whereupon this suit was commenced.

The association is a purely mutual enterprise. Its certificate of incorporation states, among other things, that the association is incorporated for the purpose of "raising a fund by the collection of dues or stated payments from its members to be loaned among its members." The by-laws required that all fully paid and installment stock should be credited semiannually with proper proportionate parts of the association's profits, and provided that when the amount paid in by a shareholder, plus his share of the association's earnings, equaled the par value of his shares, his stock would be matured and its face value of $100 a share would then be paid to the member, at which time he was required to

surrender the matured certificate. The answer alleges that the shareholders were never credited with earnings to which they were so entitled; that the association's books show a capital liability to each of its shareholders of merely the amount paid in by him; that instead of maturing stock in the manner required by its by-laws, the association appropriated the earnings that belonged to and should have been credited to other shareholders and portions of capital funds paid into the association by other shareholders, and used these funds to arbitrarily mature stock on the dates upon which the by-laws estimated that the stock would mature; that at no time within the period of five years preceding July 6, 1932, did the capital paid in by any shareholder, plus his pro rata share of the association's profits for the time required to mature stock as estimated in the by-laws, equal the matured or face value of such stock, and at no time within that period did the association's board of directors find, declare or determine that any of the association's stock had matured or that the moneys paid in by any shareholder, augmented by his proportionate part of the association's earnings, equaled the face value of his stock; that all stock matured within that period of five years was matured by disbursing to its holders not only the capital paid in by them and their proportionate part of the association's earnings, but by also improperly paying to them a part of the association's capital paid in by other shareholders and earnings that should have been credited to other shareholders; that the funds of the association so paid without warrant during those five years to shareholders who are now members of the association aggregate a sum in excess of $500,000; that if the capital accounts of shareholders who are now members of the association are not charged with the amounts heretofore improperly paid to them in maturing stock as aforesaid and the association's capital liabilities are not thereby reduced to the extent of $500,000 the association cannot credit its members with the shares of the association's

earnings to which its by-laws entitle them and will be unable to meet its obligations to stockholders, even though it should realize on all its assets their full book value; that the plaintiffs' pro rata share of the association's earnings on the stock now owned by them with which, under the association's by-laws, they should have been credited, but which were paid to other stockholders who are now members of the association, aggregates $1,323.60, which, when added to the net amount of $7,811.93 paid into the association by the plaintiffs, gives their stock a book value of $9,135.55; and that during the five years preceding July 6, 1932, the association matured 180 shares of its stock owned by the plaintiffs, and in so doing paid to them $5,972.81 in excess of the amount of the plaintiffs' investment plus their pro rata share of the association's profits. The answer also alleges that during the period of five years next prior to July 6, 1932, the association was insolvent and unable to meet its obligations to its shareholders. All of this is admitted by the demurrer to be true.

Counsel for the association correctly say that, in a sense, it is but a stakeholder whose only wish is to make an equitable distribution of its assets to its members. The plaintiffs invoked the equity jurisdiction of the court. In the circumstances presented by the record, what are their equities?

The controlling principle of the association is mutuality among its shareholders; all must fare alike; one shareholder cannot profit at the expense of another. *Columbia Building & Loan Association v. Lyttle,* 16 Colo. App. 423, 427, 66 Pac. 247; 4 R. C. L. p. 346. Judge Endlich, in section 514 of his work on Building Associations (2d Ed.), says: "The truth is that there is implied, in the very essence of the building association scheme, an agreement between the members of every association, in the light of which all other agreements, and all rules and by-laws, must be read, and to which they must be conformed: and that is the agreement that all

burdens shall be equally borne, as well as all profits equally shared,—that the whole enterprise shall be conducted and the rights and obligations of the participants in it shall be adjusted upon a basis of strict mutuality, equality and fairness. To permit one member, or one set of members to be paid in full at the expense of others who get less is not to carry out that scheme or agreement, unless there is something which gives the former an equity superior to the latter, whereby they have a better and stronger claim upon the property of the association.''

■ Under the by-laws, stock matures when the amount paid in by a shareholder, plus his share of the earnings, equals the par value of the stock. It does not mature until that time. The payment to a shareholder of the par value of his stock when the amount paid in by him, plus his share of the earnings, does not equal the par value of the stock—and such is the present case— is unwarranted and does not mature the stock; and no declaration to the contrary by an officer of the association, and no resolution of the board of directors declaring that the stock has matured—and there was none in this case—could make such stock matured stock contrary to the fact. Indeed, if the association had expressly contracted to mature stock at a specified date, such contract would have been void, and, notwithstanding the contract, such stock would mature when, and only when, the amount paid in by the shareholder, plus his share of the earnings, equaled the par value of the stock. *Columbia Building & Loan Association v. Lyttle, supra; People's Building & Loan Association v. Purdy*, 20 Colo. App. 287, 78 Pac. 465. That has been the law in this state for twenty-nine years. In *Eastern Building & Loan Association v. Williamson*, 189 U. S. 122, 23 Sup. Ct. 527, the Supreme Court of the United States seems to have taken a different view of the law, but it was upholding the construction given by the Supreme Court of South Carolina to the building and loan law of New York.

In that case the association contracted to pay the full value of certificates at a date stated, whether earned or not, and it was held that there is nothing in the New York law that relieves the association of the obligation to pay as agreed. However, that case has no application to the present case, for here there was no such agreement. The opinion in that case calls attention to the fact that the by-laws contain no provisions similar to those contained in the by-laws involved in this case.

The question presented by the record may be thus stated: Where a member of a mutual association, such as this is, has been credited, in plain violation of the by-laws governing the association, with amounts that should have been credited to his associates, and upon discovery of such violation of the by-laws the association seeks to correct the error by charging back to the member the amounts wrongfully credited to him, so as to produce equality among the members, is such member entitled to the equitable remedy of injunction to restrain the association from so doing? We have no doubt whatever that justice requires an answer in the negative.

Counsel for the plaintiffs cite *McDonald v. Williams*, 174 U. S. 397, 19 Sup. Ct. 743, and other cases holding that where stockholders of a solvent corporation receive in good faith dividends paid out of capital instead of out of profits, the corporation or its receiver cannot recover from them the dividends so paid. Such cases have no application to the present case. The corporations involved in those cases were ordinary corporations and were solvent, and the principle announced applies only where the corporation is solvent. In the present case, the association was not solvent, for the unauthorized withdrawals of over $500,000 rendered the association unable to satisfy the demands of its shareholders. In the case of building and loan associations, the test of insolvency is different from that applied in the case of ordinary corporations, for the former has few, if any, creditors. It is said that building and loan associations

"are corporations in the nature of partnerships and, therefore, much of the law applicable to ordinary corporations has no application to them." Sundheim, Building & Loan Associations (2d Ed.), §4. Discussing insolvency of such associations, Judge Endlich, in section 511 of his work, says: "It is the inability of the building association, not to pay its outside debts (for that does not seem to have ever occurred, and, in the nature of things can scarcely be thought of), but to satisfy the demands of its own members, that has been recognized as an insolvency." The present case presents no exception to the general rule thus stated by Judge Grosscup in *Towle v. American Building, Loan & Investment Society,* 61 Fed. 446: "These associations are essentially corporate copartnerships. They have no function except to gather together, from small, stated contributions, sums large enough to justify loans. Their officers are the agents of every stockholder. They have no debtors or creditors except the stockholders, and whether a stockholder is creditor or debtor depends on whether he has exercised his privilege of borrowing money from the common fund. The insolvency of such an institution is sui generis. There can be, strictly speaking, no insolvency, for the only creditors are the stockholders by virtue of their stock. The so-called insolvency is such a condition of the affairs of the association as reduces the available and collectible funds below the level of the amount of stock already paid in. The association is said to be insolvent when it cannot pay back to its stockholders the amount of their actual contributions, dollar for dollar." And see Thornton & Blackledge, Building Associations, section 385. Moreover, the dividends paid by an ordinary corporation are paid to all of the stockholders in proportion to their holdings, no stockholder receiving the share belonging to another, or otherwise profiting at the expense of another, or receiving any preference or advantage over another. As we have seen, such is not the situation in the case at bar.

■ The present proceeding may be likened to an accounting among partners. Where one partner has received more than his share of the profits or assets, the excess is charged back to him in the accounting. Where partner A has received, not only all of his share, but also a part of partner B's share, he is charged back in the accounting with the part belonging to B, and B is credited therewith. Nothing short of this would do justice among partners. And nothing short of a similar procedure would do justice among the members of this association. *Bingham v. Marion Trust Co.*, 27 Ind. App. 247, 61 N. E. 29; *Boice v. Rabb*, 24 Ind. App. 368, 55 N. E. 880; *Pine Bluff Building & Loan Association v. Thalheimer*, 74 Ark. 63, 84 S. W. 1032; *Callahan's Appeal*, 124 Pa. St. 138, 16 Atl. 638.

The plaintiffs are still members of the association, not only as to the stock that they admit is unmatured, but also as to the stock that they say has matured, but which in fact has not matured because the amount paid in, plus the earnings thereon, does not equal the par value of the stock. The association is engaged in adjusting equitably and fairly, under the decree of the district court, the rights of the shareholders, and the plaintiffs have presented no sound reason why this court should interfere.

The plaintiffs invoked the equity jurisdiction of the district court, but the relief they sought, if granted, would have produced grossly inequitable results. They were not entitled to such relief.

The trial court did not err in overruling the plaintiffs' demurrer to the answer and dismissing the suit.

The judgment is affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD dissent.

MR. CHIEF JUSTICE ADAMS, concurring specially.

Under the pleadings, I am unable to see how the district court could have done differently than to overrule

the plaintiffs' demurrer to the answer of the association, and since plaintiffs elected to stand thereon, the judgment of dismissal followed as a matter of course.

The demurrer searched the whole record, and admitted facts well pleaded. The pleadings affirmatively show that the stockholders were subject to the by-laws of the association, but that the plaintiff stockholders were erroneously paid or credited with amounts in direct contravention of such by-laws. If the court had upheld the demurrer, it would have been tantamount to a declaration that money paid by mistake cannot be recovered, and would have meant that errors of omission or commission on the part of the officers of the association are beyond the power of the court to correct. To have sustained the demurrer would also have had the effect of destroying that mutuality of interest which is the primary object to be accomplished by associations of this character. The association has only one common treasury, in which the stockholders all have a proportionate interest, and it is obvious that money cannot be paid even innocently therefrom to one stockholder contrary to the by-laws without a corresponding reduction of funds belonging to other stockholders. Equity calls for a proper readjustment if made in apt time; there is nothing revolutionary in this. It is the gist of the opinion and it must not be interpreted to extend beyond the scope of its language.