**SHAW, State Banking Com'r, v. HINTON et al.**

**No. 10771.**

Court of Civil Appeals of Texas. Dallas. July 21, 1930.

Rehearing Denied Oct. 4, 1930.

John W. Goodwin, R. L. Bobbitt, and W. Dewey Lawrence, all of Austin, for appellant.

Eugene De Bogory, of Dallas, for appellees.

VAUGHAN, J.

This suit was instituted by appellees, Reliance Building & Loan Association, a private corporation under the laws of the state of Texas, hereinafter designated appellee association, John R. Hinton, a stockholder, and George W. Youngblood, a stockholder, president, and general manager of the association, against appellant, James Shaw, banking commissioner of Texas, to enjoin appellant from prohibiting said appellee association from selling its stock and from interfering with and preventing said association from complying with the law as it now exists, passed by the Forty-First Legislature within the time prescribed by said act (Vernon's Ann. Civ. St. art. 881a—1 et seq.). Appellees, as grounds for the injunctive relief so sought, alleged in substance, viz.:

"1. That the Reliance Building and Loan Association, (hereafter called association) was incorporated under the laws of the State of Texas, November 27th, 1928.

"2. That all building and loan associations at the outset impair their capital stock by using the same in paying operating expenses, and that the Commissioner of Insurance knew of it and acquiesced in such practice.

"3. That plaintiff association began operating in January 1929, and out of its assets expended large sums of money in the purchase of its furniture and fixtures and stationery and in payment of office rent, traveling expenses and expense of procuring and installing agents, etc.

"4. That it sold its stock through agents, who received 50 cents out of the first payment of dues on each share of stock sold, and 25 cents out of subsequent monthly payment of dues until they received One Dollar and 25 cents ($1.25) per share.

"5. That plaintiff association purchased a building at 2010 Bryan Street, Dallas, Texas, as a home office, paying therefor Seventy Five Hundred ($7,500.00) Dollars and assuming an indebtedness against said building of Ninety Two Thousand Five Hundred ($92,500.00) Dollars.

"6. That having learned that it could not legally invest so much in an office building, it sold the same to J. W. Barrett, its president, for One Hundred Thirty Eight Thousand ($138,000.00) Dollars, said Barrett assuming the prior indebtedness against said property and executing his notes to the association for Forty Five Thousand Five Hundred ($45,500.-00) Dollars, which notes were endorsed by Youngblood and Talley without consideration. That at the time said notes were executed, it was understood and agreed that when the association had accumulated a surplus sufficient to equal the value of said notes that the association would issue to Barrett, Talley and Youngblood permanent stock of said association equal to the value of the notes at that time.

"7. That under the law plaintiff association is required to have permanent stock and it had sold Forty Two Thousand ($42000.00) Dollars of such stock on installment plan of Twenty Five ($25.00) per month on each One Thousand ($1000.00) Dollars stock; that on permanent stock thus sold it had received Thirty Five Hundred ($3500.00) Dollars cash, and held the notes of purchasers for Thirty Eight Thousand ($38000.00) Dollars, payable in monthly installments.

"8. That had defendant examined the association it would have discovered that it had changed its method of paying agents out of the dues and had provided a cancellation charge and a premium on stock, which not only took care of the agent's commissions, but would, within a short time, absorb all losses.

"9. That although administrative officers of the State had permitted the association to carry benefits accruing to them out of contracts to purchase stock as assets to counterbalance charges paid agents for procuring said business, defendant refused to allow such as an asset and required plaintiff association to bring in new funds to the extent of said charge.

"10. That on the 14th day of October, 1929, defendant wrote the association the following letter:

" 'Austin, Texas, October 14, 1929.

" 'Board of Directors, The Reliance Building and Loan Association, Dallas, Texas.

" 'Gentlemen: With reference to the condition of your association as shown by recent examination by this Department.

" 'You are advised that you will not be permitted to attempt, as you have done, to restore the solvency of your association, in the manner in which you have done.

" 'You will notify this office at once, just what steps have been taken to remove the losses as shown by examination, and in any event a satisfactory solution of this matter must be arranged within ten days from this day, or a satisfactory settlement of this matter.

" 'Pending the settlement of this matter you will not be allowed to take on new business, in the form of new stock or otherwise.'

"That the effect of said communication was to put an end to the business of the association and cause it to be placed in the hands of a receiver; that the liquidation of the association through receivership would be reckless loss of the Thirty Thousand ($30,000.00) Dollars paid agents for selling stock.

"11. That the association in selling the office building did so as an emergency matter, and that it should be given a reasonable time to liquidate the notes of Barrett and ten days is not a reasonable time, and that said notes can be converted into assets acceptable to defendant within a reasonable time.

"12. That the Thirty Thousand ($30,000.-00) Dollars paid the agents, the Thirty Eight Thousand ($38,000.00) Dollars in notes of subscribers of permanent stock and the notes of J. W. Barrett, endorsed by Youngblood and Talley, were not taken into consideration by defendant in determining the solvency of the association; that said items, together with the reserve of Four Thousand ($4,000.00) Dollars, make the association solvent.

"13. That if permitted to continue business and given the statutory time to build up its reserve, agents' commissions now being paid by subscribers, the association will be solvent without including the above three items aggregating approximately One Hundred Thousand ($100,000.00) Dollars; that including said three items, the association shows a surplus reserve of Sixty Thousand ($60,000.-00) Dollars.

"14. That if defendant is permitted to dissolve and liquidate the association, the stock

of plaintiff's and all other stockholders will be worthless.

"15. That from conferences with defendant and his representatives, it appeared that defendant had some personal animosity against Youngblood and that his treatment of Youngblood was such that the association would be compelled to dispense with his services, which was in effect an attempt to remove him as Vice-President, director and general manager."

Plaintiff prayed for a temporary injunction enjoining defendant from carrying out the terms of the aforesaid letter with reference to the sale of stock, and that on final hearing said injunction be made permanent, and that defendant be further enjoined from interfering and preventing plaintiffs in complying with the law as it now exists, as passed by the Forty-First Legislature, within the time as prescribed by said act, and that plaintiff association be permitted to continue its business in compliance with the law, and that defendant be enjoined from removing Youngblood as director, vice president, and general manager of said association.

Under the fiat indorsed on said petition by one of the district judges, exercising jurisdiction in Dallas county, the writ of injunction, as prayed for against appellant, was issued. Appellant answered by way of general and special exceptions, which were overruled by the court, and a special plea, in substance, as follows:

"Defendant admitted the incorporation of plaintiff as alleged and that it was organized for business in January, 1929; that since its organization it has sold $2,500,000.00 stock, upon which monthly dues had been paid; that at the outset, plaintiff expended $30,000.-00 of its capital stock in the purchase of furniture and fixtures, payment of office rent, traveling expenses and commissions for agents; that the soliciting agents were paid out of monthly dues on each share of stock sold One and 25/100 ($1.25) Dollars; that the association purchased an office building at the price and on the terms stated by plaintiff; that it sold said office building to J. W. Barrett, its president, for One Hundred Thirty Eight ($138,000.00) Thousand Dollars, said Barrett assuming prior liens on the building amounting to Ninety Two Thousand Five Hundred ($92,500.00) Dollars, and executing his notes for the balance of Forty Five Thousand and Five Hundred ($45,500.00) Dollars, and that Youngblood and Talley endorsed his notes without consideration; that the expenses of plaintiff association were in excess of its gross profits; that the association sold permanent stock amounting to par value of Forty Two Thousand ($42,000.00) Dollars on the installment plan, and there had been paid on said shares Thirty Five Hundred ($3,500.-00) Dollars, the purchasers executing their notes for the balance due on such stock;

that in declaring the insolvency of the association defendant did not consider the Thirty Thousand ($30,000.00) Dollars expense paid out of the capital stock as an asset, the Thirty Eight Thousand ($38,000.00) Dollars notes given by purchasers of permanent stock and the Forty Five Thousand Five Hundred ($45,000.00) Dollars in notes given by Barrett, as assets of the association; that he wrote the letter set forth in plaintiffs' petition.

"Defendant denied that the business of the association had been successful, but alleged that to the contrary it had operated at a loss from its organization. He denied that the Thirty Thousand ($30,000.00) Dollars paid agents for sale of stock was an asset and alleged it to be a loss. He denied that the Thirty Eight Thousand ($38,000.00) Dollars notes given for permanent stock were an asset and alleged the same constituted a liability. He denied that the Barrett notes were assets and alleged that they were worthless. He denied any intention to remove Youngblood from any office or position held by him.

"Defendant further alleged that plaintiff association is insolvent and had been practically since the date of its organization, and that it had failed and refused to restore its capital stock as demanded of it by the Banking Commissioner, that from its organization, its profits being insufficient for that purpose, it has defrayed operating expenses out of its assets. That while insolvent, it declared and paid a dividend to its stockholders, using the assets of the association for that purpose, and that it had failed and refused to restore the assets thus used. That, though insolvent, it has sold and continues to sell to the public installment stock, thus defrauding the purchasers; that it has sold and continues to sell permanent stock on the installment plan in violation of the law; that, though insolvent, it has sold and continues to sell permanent stock, thus defrauding the purchasers; that for the purpose of deceiving the Banking Commissioner, who had demanded that the impaired capital stock be restored, it sold its office building worth only One Hundred Thousand ($100,000.00) Dollars, to its president, who is financially irresponsible, for a fictitious value of One Hundred Thirty Eight ($138,000.) Thousand Dollars, thus attempting to make it appear that it made a profit of Forty Five Thousand Five Hundred ($45,500.-00) Dollars and to that extent has restored its capital stock. Defendant further alleged that said association is operating at a monthly loss of some Five Thousand ($5,000.00) Dollars, and that there is no probability that it will ever be able to restore its impaired capital stock or that its income will ever meet its expenses, and prayed that the temporary injunction be dissolved."

A trial before the court without a jury had on January 17, 1930, resulted in a judgment enjoining appellant from "interfering and

preventing plaintiff from complying with the law as it now exists and passed by the 41st Legislature of Texas, within the time as prescribed by said act, and that said plaintiff corporation be permitted to continue in business in full compliance with said law; that the defendant, James Shaw, as Commissioner of Banking, be restrained and enjoined from removing the plaintiff, G. Q. Youngblood, from his offices, as director, vice-president, and general manager of the Reliance Building and Loan Association."

Appellant, by his first proposition, viz.: "Plaintiff's petition was subject to the general demurrer addressed to it because it alleged no facts showing that the Banking Commissioner had taken the steps prescribed by section 33, chapter 61, Acts Second Called Session of the 41st Legislature to remove Youngblood, and because the facts alleged show that plaintiff association is insolvent and has failed and refused to comply with the order of the Banking Commissioner that its assets be increased to equal its liabilities, which authorized the cancellation of its permit to do business," and second proposition, viz.: "Plaintiff's petition was subject to the general demurrer addressed to it because it does not allege what law passed by the 41st Legislature defendant was interfering and preventing plaintiff association from complying with and how or in what manner he interfered and prevented plaintiff association from complying with such law, but merely alleged a conclusion, and because said petition alleges no facts showing that defendant had taken the steps prescribed by section 33, chapter 61, Acts Second Called Session of the 41st Legislature to remove Youngblood," based on his first assignment of error, urges that the court erred in overruling his general demurrer to said petition.

The allegations made by appellee association for the purpose of showing that it was entitled to the equitable relief sought would not, if same were made as grounds of defense to a petition filed by appellant in his official capacity against said appellee for the purpose of having adjudicated favorable to the department of banking of the state of Texas the official acts and conduct complained of in appellee's petition, present a valid defense thereto.

As to the effect of the letter of date October 15, 1928, appellees alleged that: "The effect of which communication was to put an end to the business of the plaintiff corporation and said plaintiff. Youngblood's official connection therewith, that the law as it now is provides that suit be brought and the affairs of the concern be put in the hands of a receiver, under such circumstances as are offered to in said letter if true."

For the purpose of showing that appellee association was insolvent, it was alleged: "That the advancements made to agents, ap-

proximating $30,000.00; the obligations of subscribers to the reserve of approximately $38,000.00; and the obligation secured by inferior lien on the real estate herein described, endorsed by Youngblood and Talley and executed by Barrett, of approximately $40,000.00, which three items total considerably in excess of $100,000.00 are not taken into consideration as assets in determining the solvency of the plaintiff corporation by the defendant. That in truth and in fact said items, taken into consideration with the reserve of approximately $4,000.00, makes said plaintiff corporation eminently solvent, and the statutory allowance of time of one year to build up a reserve under the law is ample time for the plaintiff corporation to build up said full statutory reserve, according to the terms thereof."

The following allegations being but mere conclusions, not based upon substantial facts alleged in support thereof, are not to be considered, viz.: "That if plaintiff is allowed to continue its said business and is permitted said statutory time within which to build up its reserve under its new form of procedure, to wit: that no agency expense will be charged against the assets of said concern, but all agents expense will be covered by fees charged to the subscribers, that plaintiff corporation in a few months will earn sufficient funds to disregard the three items aggregating $100,000.00, referred to in the preceding paragraph, and without these being included show a surplus; that a compliance with the letter herein shown, even temporarily, would demoralize and destroy the plaintiff corporation's selling organization, and said salesmen and solicitors would form connections with other concerns, and if it be made known to them that the defendant has refused permission for the concern to longer continue in business, all of the money invested in said agents' force will be a total loss; that if the defendant is permitted to dissolve and liquidate the plaintiff corporation, as he threatens to do, that the stock of plaintiff in said concern, and the stock of the others who are similarly situated, will at once become valueless and will be a total loss to this plaintiff; that the said plaintiff, and those similarly situated, have in good faith paid for said stock, and plaintiff believes that the affairs of plaintiff corporation have been carried forward in a faithful, diligent and expeditious manner, and will continue to be so carried forward."

■■ It is hard to conceive how it is reasonably possible for the conclusion to be reached from the alleged facts and the alleged assumptions based thereon that same would present a valid defense to a cause of action such as is sought to be enjoined from being brought by appellant in his official capacity. Certainly, if said allegations contained in an answer would not amount to a

valid defense to the character of proceedings sought to be enjoined by appellant, then, by a higher degree of reasoning, the conclusion is inevitable that same could not be of sufficient dignity to invoke the powers of a court of equity to prevent the institution of such a suit; for of a surety, to invoke the preliminary injunctive powers of a court of equity, to prevent the doing of an act, or acts, on the ground that, if not restrained, same will be perpetrated to the irreparable injury of the complaining party, requires a more cogent state of facts to be alleged than would be required to be presented as a defense to the same allegations constituting a cause of action seeking to enforce rights alleged to exist under and by virtue of the same state of facts.

Section 13, chapter 61, Acts 1929, page 100, Second Called Session, 41st Legislature (Vernon's Ann. Civ. St. art. 881(A—13), not only authorizes, but requires, the banking commissioner of Texas, upon ascertaining by examination, "or from other evidence, that any building and loan association is conducting its business, in whole or in part, contrary to law, or failing to comply with the law, that its assets are less than its liabilities, including all its capital stock, or is conducting its business in an unsafe, unauthorized or fraudulent manner * * * by an order in writing addressed to the president of such association, direct attention thereto and order compliance with the law, and that the assets be increased to equal liabilities." And further provides that: "In case such association shall refuse or neglect to comply with any such order lawfully made, or in case any such association is insolvent or in danger of insolvency, or its assets are impaired * * * shall annul its certificate of authority."

■ Appellees' petition shows that appellee association was insolvent, was conducting its business practically in whole contrary to law, and in an unsafe and unauthorized manner; that appellant, by an order in writing (letter of date October 15, 1929), addressed to the president of appellee association, called attention to its insolvency, and ordered that its assets be increased to equal its liabilities; that said appellee had refused or neglected to comply with said order. Therefore, under the provisions of said section 13, supra, appellant, acting in his official capacity, was required to annul said appellee's certificate of authority.

■ That portion of appellees' petition seeking to enjoin appellant from removing appellee Youngblood as an officer and director of appellee association alleged no facts showing that appellant in his official capacity had taken steps, under the following provision of section 33, c. 61, supra (Vernon's Ann. Civ. St. art. 881a—32), viz.: "The Banking Commissioner of Texas may remove any officer or director of any such building and loan association for just cause specified by him and after ten days notice in writing to such person." The power to remove being purely statutory, appellant would necessarily have to observe the above provision of the law. The right to equitable relief in behalf of said appellee Youngblood is based upon the further provision of said section 33, viz.: "Any officer or director so notified of the intention of the Commissioner [of Banking] and feeling himself aggrieved by such removal shall have a right to apply to the District Court of his residence, for a writ of injunction to restrain such removal, as in ordinary injunctive cases."

[5] Appellees not having alleged that appellant, in his official capacity, had notified appellee Youngblood in writing that he intended to remove him as an officer or director of appellee association, for just cause specified in such notice, the petition on this phase of the case was subject to a general demurrer. Sections 13, 14, and 33, c. 61, Acts Second Called Session, 41st Legislature (Vernon's Ann. Civ. St. arts. 881a—13, 881a—14, 881a—32); Towle v. American Bldg., Loan & Investment Soc. (C. C.) 61 F. 446; Endlich on Building and Loan Associations, § 511.

Appellant, by appropriate propositions contends that the material conclusions of fact, as found by the trial judge, are contrary to and not supported by the evidence, and that therefore the case on its merits should be reversed and judgment rendered for appellant.

By the testimony of the witnesses, introduced both by appellant and appellees, respectively, it was clearly established that appellee corporation was conducting its business practically in whole contrary to the provisions of the act regulating building and loan associations, as passed by the Forty-First Legislature at its Second Called Session, Acts 1929, p. 100, and had failed to comply with the essential provisions thereof, in this—its assets were less than its liabilities, including all of its capital stock, and was conducting its business in an unsafe and unauthorized manner—in that, the expenses of appellee association, from date of organization to June 30, 1929, was $29,162.44, and that the total income for the same period of time was $2,640.49, and that the difference between the expenses and the income was paid out of its capital stock; that the audit of date September 30, 1929, made by the association, showed that the total loss up to that date was $45,262.80; that the audit made by the banking commissioner showing expenses of appellee association from organization down to November 16, 1929, was correct, and showed expenses to have been $62,585.15, and that the income during said period was $7,929.07, or a loss of $54,657.45; that

the association had sold about $38,000 permanent stock on the installment plan, of which sum only $4,500 had been paid; that it held notes for the balance.

J. O. Talley, secretary of said association, testified: that he indorsed notes given by J. W. Barrett to the association for the building situated at 2010 Bryan street; that he received no consideration therefor; that he was a married man, owned a home on which there was an incumbrance of $1,400; that he owned about 500 acres of mineral unimproved land; that he would not take $15,000 for it, but did not think he could get $5,000 for it; that he owned some personal property, from $1,200 to $1,500 in notes secured by lien on some land.

J. W. Barrett testified that he bought the building at 2010 Bryan street from appellee association for the purpose of having the notes to put in the association to help it; that appellee association purchased the building at 2010 Bryan street for an office building for $100,000, paid $7,500 in cash, and assumed the payment of an indebtedness against the building of $92,500, on which indebtedness no sum had been paid; that he purchased the property from appellee association at an agreed consideration of $138,000, paid and assumed to be paid by him, as follows: Assumed payment of said $92,500 indebtedness against said property and executed his note to the association for $45,500, payable in annual installments; that on June 30, 1929, appellee association declared a dividend in favor of the stockholders, which was paid out of the cash on hand.

The trial court enjoined appellant from preventing appellee association from complying with the law as it exists, viz., the provision of chapter 61, supra. From this it is to be presumed that the court found that the law was being complied with by said appellee. This finding is absolutely contrary to the following facts established without conflict in the testimony, viz.: That from the organization of appellee association it had paid operating expenses out of its capital stock, in violation of section 42, c. 61, supra (Vernon's Ann. Civ. St. art. 881a—41), thereby depleting the capital stock; that, though insolvent, it declared and paid a dividend to stockholders; that, though insolvent, it sold permanent stock on the installment plan; that it purchased an office building for $100,000 in violation of section 38 of said Act (Vernon's Ann. Civ. St. art. 881a—37); that for the purpose of deceiving the banking commissioner and making it appear that it had made a profit of $38,000, and thereby recouped its losses, it sold its office building to Barrett on credit for a recited consideration of $138,000, Barrett assuming $92,500 indebtedness against the building and executing his notes for the sum of $45,500, which notes were indorsed by Youngblood and Talley, without consideration, for the purpose of making it appear that they had some value, when as a matter of fact the evidence showed that the combined financial responsibility of the makers and indorsers would not exceed in the aggregate $15,000. Furthermore, the evidence failed to establish any of the material facts alleged by appellees as grounds for the relief sought, notably, that appellant had interfered with a compliance by appellee association with the law to be observed by it in the matter of conducting the business for which it was incorporated. The judgment of the court enjoined appellant from removing appellee Youngblood as "director, vice-president and general manager" of appellee association, notwithstanding the record is barren of any evidence showing or tending to show that the banking commissioner of Texas had taken any action or contemplated taking any action to so remove said Youngblood; therefore, the court erred in rendering said judgment. 32 C. J. 368, § 620, and page 378, § 645, and notes.

Insolvency of a building and loan association is such a condition of its affairs as renders its available and collectible funds below the level of the amount of its stock. It is insolvent when it cannot pay back the stockholders the amount of their contributions, dollar for dollar. From this definition it follows that, in determining the solvency of appellee association, only its tangible assets could be considered; likewise, in determining whether its assets equal its liabilities, only tangible assets can be considered. Under this rule of law, it was established without conflict in the evidence that appellee association was and is insolvent. We therefore set aside all of the findings of fact made by the trial court inconsistent with the findings made by this court, based upon the evidence, as revealed by the record before us.

The court erred in its conclusions of law, viz.: "That this Act (referring to Act 41st Legislature, c. 61, supra), if it does empower the Commissioner of Banking to terminate the right of such association to continue in business without giving reasonable time to meet the provisions of such act, is unconstitutional, in that, section 13 of such act delegates or attempts to delegate extra judicial powers upon the Commissioner of Banking in this respect—that such power, if any conferred, is harsh, arbitrary, and it was not contemplated by the Legislature to confer such powers upon the Commissioner of Banking." It was within the police power of the state to enact this statute regulating corporations of its own creation, and to clothe some one with the power to enforce same.

The holding of the court that "the ten days referred to in the letter of October 15,

1929, from the Commissioner of Banking to the appellee association, is an unreasonable demand, and too short a time within which to comply with the demands of the Commissioner of Banking," was error; there being no evidence to the effect, disclosed by the record, that ten days was an insufficient time within which to comply with the demands of the commissioner of banking, or that appellee association had made a bona fide effort to comply therewith, and found the time insufficient for that purpose. Further, it is shown by the record that appellee association had, from October 14, 1929, date of said letter, to January 17, 1930, date of judgment rendered by trial court in this cause, within which to comply with the order of the commissioner of banking; therefore, the finding by the trial court that ten days was insufficient is immaterial.

 The Legislature failed to prescribe the period of time that should be allowed an association to comply with the order of the commissioner of banking, made under the provisions of said section 13, but left the length of time in that respect to the discretion of the commissioner of banking, and, unless there has been an abuse of that discretion, courts have no right to substitute their judgment in reference thereto for the discretion of the commissioner so exercised. In order to show an abuse of discretion on the part of appellant, it was necessary that appellees introduce evidence showing that appellee association made a bona fide effort to comply with the order of the commissioner and could not do so within the time allowed. In this respect, it may be said, in support of the above conclusion, that there is no language in chapter 61, supra, indicating that prior existing building and loan associations should have a more reasonable time than that allowed by the commissioner, or that any other time should be allowed existing associations than that allowed associations incorporated under said act; but, to the contrary, said act is expressly made applicable to associations incorporated prior to its passage, as is clear from the terms of section 29, c. 61, supra (Vernon's Ann. Civ. St. art. 881a—28), viz.: "All Texas building and loan associations, now or hereafter organized, and all foreign associations, now or hereafter organized to do business in Texas, shall continue their corporate existence and power and be subject to the provisions of this Act in like manner as corporations which are incorporated hereunder."

By reason of the conclusions above announced, based upon the record before us, the judgment of the trial court is reversed and here rendered in favor of appellant.

Reversed and rendered.